JOSEPH PAUL, PLAINTIFF, DEFENDANT IN ERROR, v. THE PENNSYLVANIA RAILROAD COMPANY, DEFENDANT, PLAINTIFF IN ERROR.

Argued November 9, 1903—Decided February 23, 1904.

1. A common carrier cannot by a special contract secure exemption from liability for losses occasioned by its negligence.
2. Nor can a common carrier limit the amount of its liability for losses caused by its negligence.
3. Whether a contract between a common carrier and a shipper of goods by which a valuation is fixed upon the goods, and the liability limited to that amount, is valid, is not decided.
4. Where, by contract for the carrying of live stock, the shipper agrees to take care of, feed and water the stock, whether delayed in transit or otherwise, there can be no recovery of damages arising from the failure to care for, feed and water.
5. *Lewis* v. *Pennsylvania Railroad Co.*, approved.

---

On error to Hudson Circuit.

Before GUMMERE, CHIEF JUSTICE, and Justices DIXON, HENDRICKSON and SWAYZE.

For the plaintiff, defendant in error, *Maximilian T. Rosenberg.*

For the defendant, plaintiff in error, *James B. Vredenburgh.*

The opinion of the court was delivered by

SWAYZE, J. On July 24th, 1902, the plaintiff shipped live stock from Aberdeen, Maryland, to Canfield & Co., Harrison, N. J. The contract was made between the plaintiff and the Philadelphia, Wilmington and Baltimore Railroad Company and was what is called the "uniform live stock contract." It is the same form of contract which was considered by this court in *Lewis* v. *Pennsylvania Railroad Co., ante* p. 132. The contract provided that the live stock had been received by the carrier for itself and on behalf of connecting carriers upon certain terms and conditions, among which were the following:

"That the said shipper is at his own sole risk and expense to load and take care of, and to feed and water said stock whilst being transported, whether delayed in transit or otherwise, and to unload the same, and neither said carrier nor any connecting carrier is to be under any liability or duty with reference thereto, except in the actual transportation of the same.

"The said carrier, or any connecting carrier, shall not be liable for or on account of any injury sustained by said live stock, occasioned by any or either of the following causes, to wit: * * * for delay caused by stress of weather, by obstruction of track, * * * or for any causes beyond their control.

"In the event of any unusual delay or detention of said live stock caused by the negligence of the said carrier or its employes, or its connecting carriers, or their employes, or otherwise, the said shipper agrees to accept as full compensation for the loss or damage sustained thereby the amount actually expended by said shipper in the purchase of food and water for said stock while so detained."

The stock were loaded upon the cars at Aberdeen about 2 P. M., July 24th, and the plaintiff placed his drover, Paine, in charge of the stock. Paine remained on the train during the transit over the Philadelphia, Wilmington and Baltimore railroad and over the railroad of the defendant company until 8

A. M. on July 25th. The train had then reached Waverly, a few miles from Harrison. At this point Paine abandoned the stock without notice to the defendant and knowing that there was a block of cattle cars ahead of his train. Among the stock were fresh milch cows, which should have been milked in the morning of the 25th. They did not reach their destination until 11:30 P. M. of that day and were then in bad condition because of the failure to milk, feed and water them at the proper time.

During the day of the 25th the plaintiff telephoned to the freight station of the railroad company to ascertain about the delay in delivering the stock, and the person in charge of the office reported that he did not know anything about them. Paine, the drover, about half-past three or four o'clock in the afternoon, went to the general office of the railroad company and was informed that they did not know anything about the car, but that a car of that description had been sent to South Broad street, Newark.

There was a motion to nonsuit and also to direct a verdict, which the trial judge refused and exceptions were duly sealed.

The judge charged the jury as follows:

"There are certain elements of damage, such as regards the water and feeding of the cattle, and I have to charge you on that point that under the terms of the contract, there having been a man in charge to water and feed and also to take proper care of the stock, if a reasonable opportunity was afforded to perform those functions, then the railroad company would not be liable for any damage resulting from a lack of water, feed or care; but if the situation was such that the man in charge thought, or that it would be plain to the man in charge, that he would not be able to water, feed and take care of the stock, then the liability would exist, notwithstanding the clause of the contract in question."

The judge also charged that "if it was obvious that Paine's staying by the cattle could do no good, and if he was placed in a position where, in the judgment of a reasonably prudent man, it was necessary that something should be done to try

to get these cattle through, then he was justified in leaving them."

Exception was taken to these portions of the charge. The exception pointed out that there was no proof that Paine, the drover, sought any opportunity to care for the stock. Paine, in his testimony upon this subject, says that he "left the train at Waverly and went over to the stock yard and informed them that the car was coming and that there was a block ahead at the time—cattle cars." He also said that that was his usual practice. It is clear that Paine abandoned the stock for the reason that he expected a delivery at the stock yards before the necessity for further care arose. The greater part of the damages claimed by the plaintiff arose from the fact that the cows were finally delivered with spoiled bags, owing to the failure to milk them in the morning.

We reaffirm what we said in Lewis *v.* Pennsylvania Railroad Company, that a contract between a carrier and a shipper that the shipper shall take care of, feed and water the stock, whether delayed in transit or otherwise, is valid, and that the carrier is not liable for injury arising from failure to take care of, feed and water the stock. It was not necessary to decide in the Lewis case whether the carrier could contract for exemption from liability for injuries due to the carrier's negligence. This question has never been actually presented for decision in this state, although there was an intimation in *Ashmore* v. *Pennsylvania Steam Towing Transportation Co.*, 4 *Dutcher* 180, that such a contract could not be sustained. Since that case was decided the question has been passed upon by the Supreme Court of the United States in the leading case of *New York Central Railroad Co.* v. *Lockwood*, 17 *Wall.* 357, and the doctrine of that case has been very generally adopted in the courts of the different states and seems to us sound upon principle. There is a greater diversity of opinion among the authorities as to the right of the carrier to contract for a limitation of the amount of damages recoverable where the loss is occasioned by negligence. The great weight of authority and, as we think, correct principle,

are against the right of the carrier to limit the amount of recovery. The authorities are collected in Judge McClain's article in 6 *Encycl. L. & Pro.* 398, 399; *Ball* v. *Wabash, St. Louis and Pacific Railway Co.,* 83 *Mo.* 574. It is unnecessary now to express any opinion upon the right of the shipper and carrier to agree upon a value for the goods carried and to limit the right of recovery to the value agreed upon.

Upon these principles, if there was evidence of negligence, the trial judge was right in refusing to nonsuit and to direct a verdict for the defendant. The only evidence of negligence is the long delay from early in the morning until nearly midnight in transporting the stock over the few miles between Waverly and Harrison. It is said on behalf of the defendant that the plaintiff's case showed that this delay was due to obstruction of the track, and that this was one of the excepted causes of delay for which the defendant was not liable under the contract. All that the evidence showed was the existence of the obstruction at the time the drover left the train in the early morning. We think that the delay in this case was so great as to require the finding of negligence on the part of the defendant unless explained. No explanation was attempted. The court was therefore right in refusing to nonsuit or to direct a verdict.

There was error, however, in the rule adopted with reference to the measure of damages. The Lewis case holds that the carrier is not liable for injury to live stock transported under a contract like that involved in the present case, where the injury arises from failure to care for, feed and water the stock. The court, in the present case, limited the exemption to a case where the carrier afforded a reasonable opportunity to perform these functions, and left it to the jury to say whether Paine was justified in leaving the train at Waverly. This charge introduces an element into the contract which was not inserted by the parties and was unwarranted. It is unnecessary in the present case to express any opinion as to the rights and liabilities of the parties in a case in which the shipper requests an opportunity to care for the stock and that request is denied.

This case presents merely the question of the abandonment of the stock by the drover in charge. The damages should have been limited to the cost of caring for the stock from the morning of the 25th, when they should have arrived, until the next market day, on the following Monday, and to the difference in value between such stock in good condition on Friday morning and stock of the same character in good condition on the following Monday.

The plaintiff cannot be allowed to recover for any damage that may have been due to the failure to care for, feed and water the stock, for these damages were the result of the default of his own drover. For this reason the judgment must be reversed and there must be a *venire de novo*.