## Bright *v.* Pennsylvania Railroad Company, Appellant (No. 1).

*Railroads—Negligence—Terminal station — Terminal company —Negligent operation of gates to train shed.*

Where under an act of congress all of the terminal agencies and facilities of railroads serving the City of Washington in the District of Columbia have been placed under the exclusive control of the Washington Terminal Company, a Federal corporation, a railroad using the terminal station cannot be held liable for injuries to an excursionist passenger resulting from the alleged negligent act of the employees of the terminal company in shifting a signal sign from one gate to another, causing a sudden surging of the crowd in which the passenger was injured.

When it is apparent that a railroad company has no control or right of control over an unruly crowd that is not on its property or any property over which it has a contract right of control, a passenger who is injured in the crush of the crowd, cannot recover from the railroad company for the reason that such company could not reasonably have anticipated or guarded against an unexpected movement of an unruly crowd on the property of another company.

Argued Nov. 12, 1917. Appeal, No. 6, Oct. T., 1917, by defendant, from judgment of C. P. Berks Co., June T., 1915, No. 5, on verdict for plaintiff in case of Edith M. Bright and Charles W. Bright, her husband, v. Pennsylvania Railroad Company. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART, TREXLER and WILLIAMS, JJ. Reversed.

Trespass to recover damages for personal injuries. Before ENDLICH, P. J.

The facts are stated in the opinion of the Superior Court.

Verdict and judgment for plaintiff for $936.  Defendant appealed.

*Errors assigned,* among others, was in overruling motion of defendant for judgment n. o. v.

*Cyrus G. Derr,* for appellant.—The court below should have instructed the jury that the negligence of the Washington Terminal Company, operating the said station, if there was such negligence, could not be imputed to the appellant company:  Hoehle v. Allegheny Heating Co., 5 Pa. Superior Ct. 21;  Peters v. Rylands, 20 Pa. 497;  Rauch v. Lloyd & Hill, 31 Pa. 358;  Oil Creek, Etc., Ry. Co. v. Keighron, 74 Pa. 316.

*Joseph R. Dickinson,* with him *Walter G. Steininger,* for appellee.—A railroad company making use of the servants of another in discharging its duties to passengers is liable for the negligence of such servant.  In other words, as to the passenger such servants are the servants of the railroad company:  Peters v. Rylands, 20 Pa. 497; Oil Creek, Etc., R. R. v. Keighron, 74 Pa. 316.

OPINION BY ORLADY, P. J., March 2, 1918:

The plaintiff recovered a verdict in an action of trespass, for injuries sustained by her under the following circumstances:

On May 4, 1913, with her husband and a large excursion party, she left Reading, Pennsylvania, on a special train for Washington, D. C., and arrived in safety at the terminal station in that city.  The return train was advertised to leave the terminal at 7:10 p. m., and signs of "Express to Reading only" were exhibited at a gateway entrance.  The railroad station is of ample proportions, and the space between the waiting rooms and the railroad tracks is large enough to accommodate many

thousands of people. A large number of persons congregated near the gate entrances, and after some delay the signal sign was shifted from one gate to another, whereupon the crowd surged or moved in a body to the sign at the new location. In the crush or movement of this body of excursionists the plaintiff was pushed by the crowd and sustained serious injuries.

By the undisputed testimony it appears, the station terminal at Washington is not in any way under the control or management of the Pennsylvania Railroad Company, this defendant. An Act of Congress approved February 12, 1901, U. S. Statutes at Large 774, provides for eliminating certain grade crossings of railroads in the District of Columbia, and the creation and erection of new terminals and tracks for the railroads centering in the City of Washington. Pursuant thereto, a new terminal was erected, and after certain preliminary construction was done, the rights of the railroads in the old location as named, ceased and determined and all then existing tracks and structures were removed; a deed in due form was executed, acknowledged and delivered to the commissioners of the District of Columbia, granting, conveying, assigning, and transferring to the United States of America, all the estates, rights, titles and interest of the railroads therein named, and providing for the creation and organization in the District of Columbia, of a terminal company, to have control of the terminal and its branches, buildings and facilities.

Pursuant to this, an act of congress was approved February 28, 1903, 32 U. S. Statutes at Large, part 1, page 909, "Providing for a Union Station in the District of Columbia, and for other purposes; and that the main passenger station and terminal for the accommodation of passenger traffic or railroads named, and the passenger traffic of such other companies as may be moved over the railroads of either of said companies shall be constructed by said terminal company, and subject to the approval of the commissioners of the District of Colum-

bia, and, after construction the cost of maintenance to be wholly borne and paid as in the case of other public highways in the District of Columbia."

The specific allegation of negligence as set out in the plaintiff's statement is, that at the time advertised by the railroad company for the leaving of the excursion train for Reading, the plaintiff and her husband took a place in line with about forty passengers awaiting departure of the . pecial train, at a gate to which they had been instructed by a station employee to wait, said gate being then closed, and the company negligently and carelessly permitted a large number of other passengers intending to board the same special excursion train or trains, numbering 700 or more, to assemble before another gateway in the station, which was not the entrance to the track from which the special excursion train for Reading departed; while these persons were so assembled, an announcement was made by those in control of the gates and entrances that the special excursion train for Reading would leave from the gateway or track where the plaintiff and other intending passengers were standing. Immediately upon such announcement being made, the defendant company permitted the large crowd of 700 persons to rush from the gateway where they had been assembled over to and back of the plaintiff at the gateway where she was standing, and the crowd so rushed and pushed, and with such force, that Edith M. Bright, the plaintiff, was not able to extricate herself from the crowd, to a place of safety, and by reason of which she was squeezed and crushed against a metal guard or rail with such force that she was severely injured, etc. There is no other negligent act or omission of duty contributing to the plaintiff's injuries alleged against the defendant company.

The first important inquiry is in regard to the control of the defendant over the station, policemen or guards, the platform, the approaches to the tracks, and the gates permitting exit from the station proper to the cars.

This is clearly and definitely settled by the acts of congress authorizing the construction and determining the control over all these railroad facilities. It is established by many decisions that in every case involving negligence, there are necessarily three elements essential for consideration: First—The existence of a duty on the part of the defendant to protect the plaintiff from the injury; Second—The failure of the defendant to perform that duty; Third—Injury to the plaintiff from such failure of the defendant. When these elements are brought together, they immediately constitute actionable negligence; and the absence of any one of these elements renders the complaint bad or the evidence insufficient.

It is assumed that the car on which the plaintiff intended to take passage was the property of the defendant company, but it is urged that the injuries sustained by her were not caused by any act of the defendant's employees. All these terminal agencies and facilities were under the exclusive control of the Washington Terminal Company, which was incorporated December 6, 1901, Liber No. 9, folio 386, of the Land Records of the District of Columbia, and which at the time of this accident was operating the station under its corporate rights and duties. The uncontradicted evidence demonstrates that the Pennsylvania Railroad Company's lines end at the receiving tracks of the terminal company, which are some distance from the station, and after passing that point the cars, engines and employees are under the exclusive care and control of the terminal company.

In the regulations of the train and passenger service, as stated by the engineer of the maintenance of way,— "The Washington Terminal Company operates the station; is in exclusive possession of it; no other company or other person is in possession or participates in the operation of it, and the defendant has no word at all in the control of it; that none of the employees that participate in the operation of that station are employees of the Pennsylvania Railroad Company."

The question of the liability of this defendant to this plaintiff was fairly presented in the court below by the submission of the defendant's fourth point—viz: "The negligence of the Washington Terminal Company, or its employees operating the said station, should there have been such negligence, cannot be imputed to the defendant company," and the fifth—viz: "There is no testimony from which the jury could find negligence on the part of the defendant company injuring or contributing to the injury of Mrs. Bright, the plaintiff"—both of which points were declined by the trial judge, and not read to the jury.

The negligence of which the plaintiff complains is that the gatemen and policemen in charge of the exits from the terminal station to the excursion train were remiss in the performance of their duty. If there was a negligent discharge of a duty, the employer alone would be liable, and, by the employer is meant the person who had a right at that moment to control the doing of the act. It has been frequently held that, the facts can no more make law than law can make facts, and facts cannot control principles of law. They are made to be subject to the governing rules of the law in their application to the rights and obligations of the parties. The simple test is stated in Wood, on Master and Servant,—Who has the general control of the work? Who has the right to direct what shall be done and how to do it? And in Parsons on Contracts, "There must be some principle which limits and defines the rule of respondeat superior, and we think it may be clearly seen and fixed,—it is this: The responsibility of the master grows out of, is measured by, and begins and ends with, his control of the servant, and by Judge Cooley, in his work on Torts,— "Only as between the parties does the contract establish their relation and determine their rights. The liability of the master must come from the fact that whenever one person has placed himself under another's direction and control, in a manner that should impose on the lat-

ter the obligation to protect third parties against any injury from the acts and omissions of a subordinate, it could not at all depend on whether the master was to pay anything, nor whether the service was permanent or temporary. His control of the action of the other is the important circumstance, and the particulars of his arrangement are immaterial": Atwood v. Chicago, R. I. & P. R. R. Co., 72 Fed. Repr. 454.

The advertisement of the "Special Excursion to the National Capital" and the ticket issued to the plaintiff, specified that the special train would leave Washington, Union Station, at 7 : 10 p. m.; the defendant's relation to the traffic only bound it for the skill and diligence of its own operatives and those under its control. So far as this record discloses, neither the place where she received her injuries nor the laxity of the police service in the Washington terminal was in the most remote degree under the control of the defendant. And unless stipulated specially, there is no reason why it should be held responsible for the acts of the employees of an independent corporation or of individuals over whom it had no control. Not a single order given by the defendant would have been recognized by the terminal employees, nor could it have been enforced. It is well settled that a railroad is bound to take good care to guard against dangers reasonably to be anticipated. This general rule extends to one who is at the depot with a ticket entitling him to ride upon a train. The degree of care required of a carrier is the highest, in maintaining and guarding those whom it transports against such dangers as may be reasonably anticipated, or naturally expected to occur, but in every case called to our attention in which the carrier has been held liable, it had either direct or implied control over the agencies which produced the plaintiff's injuries. It is bound to use such means as are reasonably necessary to prevent injury to individuals from the conduct or presence of unusual crowds in passing to and from its trains, but the impossible is not re-

quired of such companies. And when it is apparent, as it is by this record, that the defendant company had no control or right of control over an unruly crowd that was not on its property, or any property over which it had a contract right of control, the plaintiff cannot recover, for the reason that it could not reasonably have anticipated or guarded against an unexpected movement of an unruly assemblance of excursionists on the property of another company.

Many authorities have been brought to our attention in the carefully prepared briefs of counsel, and after examination of all that have been presented, and others specially examined, we conclude that the defendant in this case was not liable for the injuries the plaintiff received in the Washington terminal station, by reason of the surging and unexpected movement of a crowd.

Each of the authorities in this and other jurisdictions cited by counsel, show that in every case where the carrier has been held responsible, there has been direct or implied control over the agencies, the negligent operation of which induced the injury complained of, and for the reasons above stated, without consideration of the other assignments of error, the judgment is reversed.