CELIA HORELICK AND DAVID HORELICK, PLAINTIFFS-
RESPONDENTS, v. THE PENNSYLVANIA RAILROAD
COMPANY, DEFENDANT-APPELLANT.

Argued September 9, 1953—Decided October 13, 1953.

*Mr. William E. Bardusch, Jr.,* argued the cause for the appellant (*Messrs. O'Mara, Schumann, Davis & Lynch,* attorneys; *Mr. Gerald F. O'Mara,* of counsel).

*Mr. Archie Elkins* argued the cause for the respondents.

The opinion of the court was delivered by

JACOBS, J.   The Appellate Division in 24 *N. J. Super.* 413 (1953) affirmed the County Court's action in denying a motion to strike plaintiffs' complaint and the defendant has duly appealed to this court pursuant to the grant of its application for certification.   12 *N. J.* 363 (1953).

On December 22, 1951 the plaintiff Celia Horelick, a resident of Jersey City, New Jersey, boarded the defendant's train at New York City bound for Washington, D. C.   When she arrived at Washington she alighted, walked the length of several cars along the adjacent platform toward the exit gate which led into the station proper, slipped on ice which had settled on the platform and had been obscured by accumulated dirt, and suffered personal injuries.   Thereafter she and her husband, David Horelick, filed their complaint in the Hudson County Court alleging that the defendant negligently failed to discharge its duty of maintaining the platform as a safe means of egress for passengers and claiming damages for the resulting injuries.   The defendant's answer denied negligence and asserted that plaintiff Celia Horelick was guilty of contributory negligence.   In the pretrial order the defendant admitted operation of the train and "that the place where the plaintiff alleges she was injured is the only means of egress for passengers alighting from the train at that particular location."   The pretrial order permitted the defendant to assert an additional defense, namely, "that the defendant neither owned or controlled the platform at the Washington, D. C. station."

 After the filing of its answer and the entry of the pretrial order, the defendant moved to strike the complaint upon the ground that it failed to state a claim upon which relief could be granted.   This ground was clearly without

merit since the complaint, on its face, sufficiently set forth the legal claim that the plaintiffs had suffered injury because of the defendant's negligent failure to maintain a safe means of egress from its railroad car. However, the motion was accompanied by supporting documents, including affidavits which were not excluded by the trial judge (*Rule 3:12–2*, now *R. R.* 4:12–2) and may be considered as a motion for summary judgment. See *Community Development Co. v. Seaside Gardens, Inc.,* 7 *N. J.* 153, 158 (1951). The affidavits set forth that the Pennsylvania Railroad Company does not operate the station at Washington, D. C., and that trains from New York to Washington pass from the "jurisdiction and control" of the Pennsylvania Railroad Company to the Washington Terminal Railroad Company as soon as the train proceeds south of Florida Avenue, Washington. It is conceded, however, that the trains are run entirely by Pennsylvania Railroad Company crews until they stop in the Washington Terminal and that no operational change takes place at Florida Avenue where the Pennsylvania's trackage joins trackage owned by the Washington Terminal Railroad Company. The affidavits also set forth that the railroad tickets authorizing carriage from New York to Washington bear the phrase "Subject to tariff regulations" and that tariff I. C. C. No. A–17442, in force on December 22, 1951, contained the following in paragraph 18 of section 2:

"Responsibility: In issuing tickets and checking baggage under this tariff for passage over the lines of the carriers participating herein, the issuing carriers act only as agents and are not responsible beyond their own lines, except as such responsibility may be imposed by law with respect to baggage."

Examination of the voluminous document entitled I. C. C. No. A–17442 discloses that although it was filed and published by the Pennsylvania Railroad Company for itself and specifically named "initial" and "participating" carriers, it makes no reference whatever to the Washington Terminal Railroad Company.

Before the County Court the defendant urged that since it did not own or control the platform on which the plaintiff Celia Horelick was injured, it was under no legal responsibility for its condition. This contention was rejected and an order was entered denying the motion to strike the complaint. Thereafter application was made under *Rule* 4:2–2(*b*) (now *R. R.* 2:2–3(*b*)) for leave to appeal, and after the filing of a stipulation "that in the event of a trial on the merits, the only issue will be the question of damages to the plaintiff," the Appellate Division granted such leave. In due course the appeal was heard and determined by the Appellate Division which, after pointing out that the defendant was under a common law duty to maintain the platform as a safe means of egress for its passengers, expressed the view that the Washington Terminal Company was not a common carrier within section 1(3) of the Interstate Commerce Act (49 *U. S. C. A.*, § 1(3)) and was therefore not within the terms of paragraph 18 of section 2 of the defendant's tariff. See 24 *N. J. Super.* at 420. But *cf. Union Stockyard & Transit Co. v. United States,* 308 *U. S.* 213, 60 *S. Ct.* 193, 84 *L. Ed.* 198 (1939); *McNamara v. Washington Terminal Co.,* 35 *App. D. C.* 230 (*C. A. D. C.,* 1911). Although the defendant strongly attacks the soundness of the finding that the Terminal Company was not a common carrier within the Interstate Commerce Act, we need not deal with it since we are satisfied that the language embodied in the tariff may not be construed to remove or limit the legal responsibility of the defendant for proper maintenance of the platform as the means of egress for passengers alighting, as here, from its trains on passage from New York City to Washington, D. C.

The defendant's responsibility did not terminate with the safe arrival of its train at the Washington depot; it was under clear obligation to furnish reasonably safe means of egress for its passengers. See *Del., L. & W. R. R. Co. v. Trautwein,* 52 *N. J. L.* 169 (*E. & A.* 1889); *Yetter v. Gloucester Ferry Co.,* 76 *N. J. L.* 249 (*Sup. Ct.* 1908); *Fortein v. D., L. & W. R. R. Co.,* 90 *N. J. L.* 137 (*E. & A.*

1917).   See also *Spofford v. Central R. R. Co.*, 89 *N. J. L.* 273, 275 (*E. & A.* 1916), where Justice Trenchard aptly said:

"The relation of carrier and passenger, when established, does not terminate until the passenger has reached his destination and alighted from the train upon which he has been riding, and has had a reasonable time and opportunity within which to leave the place where the passengers are discharged.   *Delaware, Lackawanna and Western Railroad Co. v. Trautwein*, 52 *N. J. L.* 169.   Consequently it is the duty of a railroad company to use reasonable care to provide its passengers a safe place and way to alight at the place of destination, and the company is liable for an accident happening by reason of the neglect of such duty to a passenger who has alighted from a car at rest in a station, and before he has had a reasonable time and opportunity to leave the premises of the company, if the circumstances are such as to induce the passenger to believe that it was safe for him to alight at the place and in the way he did.   *Falk v. New York, Susquehanna and Western Railroad Co.*, 56 *N. J. L.* 380; *Delaware, Lackawanna and Western Railroad Co. v. Trautwein*, 52 *Id.* 169."

■ The aforestated obligation of the carrier is firmly established not only by our own decisions but by common law principles (see 2 *Hutchinson, Carriers*, (*3d ed.* 1906), § 928; 10 *Am. Jur., Carriers*, § 1296, *p.* 193), and it is not suggested that it has been rejected or limited by the courts of New York where the contract of passage was entered into or the District of Columbia where the passage terminated and the injury occurred.   *Cf. Fortein v. D., L. & W. R. R. Co., supra,* 141; *Cheatham and Reese, Choice of the Applicable Law,* 52 *Col. L. Rev.* 959, 964 (1952).   Considerations of public policy have led the courts to conclude that, in general, the carrier is not permitted to relieve itself of its obligation by the simple expedient of transferring to another, ownership and control of the means of egress from its railroad cars. Thus *Hutchinson, supra,* at § 938, after discussing the common law obligation of the railroad to maintain proper means of ingress and egress, points out, with supporting references, that "it cannot escape liability for injuries resulting from its failure to exercise ordinary care in their maintenance by showing that it delegated such duty to a third person, or

that the stational facilities used by it were owned and controlled by another." Similarly, in the *Yetter* case, *supra*, the court held the defendant ferry company responsible for a passenger's injury occurring on negligently maintained means of egress which were owned by another company. In summarily disposing of the defendant's contention Chief Justice Gummere, after referring to the general rule which imposes responsibility on the carrier for maintaining means of egress, said:

"The defendant company does not deny that this is the general rule, but contends that it is not applicable in the present case, for the reason that the pier at which it discharged its passengers did not belong to it, but to the Washington Park Company. The ownership of the pier, however, is immaterial, so far as the defendant's liability to the plaintiff is concerned. It was the landing place supplied by it to the plaintiff, and it owed to her the duty of using care to see that this landing place was safe for her use."

The views expressed in the *Yetter* case have been expressly approved in later decisions of our courts. See *Cicero v. Nelson Transportation Co., Inc.*, 129 *N. J. L.* 493, 495 (*Sup. Ct.* 1943), where Justice Heher, citing the *Yetter* case, succinctly noted that "It was the place of ingress and egress supplied by defendant to plaintiffs; and it owed to them the duty of reasonable care to render it safe for such use."

Although the defendant cites the opinions in *Whilt v. Public Service Corp.*, 76 *N. J. L.* 729, 731 (*E. & A.* 1908), and *Bright v. Pennsylvania Railroad Co.*, 69 *Pa. Super.* 188 (1918), *allocatur* refused 69 *Pa. Super.* xxxix, they do not question the foregoing. In the *Whilt* case a passenger was injured while transferring from one trolley car to another and the court affirmed a nonsuit on the ground that no evidence of negligence appeared. In the course of its opinion the court expressed its view that the best considered cases support the proposition that when a passenger steps from a street car upon the street he ordinarily "becomes a traveler upon the highway and terminates his relation as a passenger,

and the carrier is not responsible for his safe passage from the street to the sidewalk." That situation is in nowise comparable to that of a passenger who is walking along a private platform, furnished or held out by the railroad as the sole means of egress from the car to the station proper or the public street or highway. *Cf. McCarron v. Erie R. Co.*, 159 *A*. 807, 10 *N. J. Misc.* 498 (*Sup. Ct.* 1932). In the *Bright* case a person in the station of the Washington Terminal Company was about to enter a gate which led to the platform and the train of the Pennsylvania Railroad Company and was injured in the surge of other persons about to enter the gate. The court found that the Pennsylvania Railroad Company, had no "control or right of control" over the unruly crowd that was not on its property and could not reasonably have "anticipated or guarded" against the event. It did not deal, and had no occasion to deal, with the extent of the Pennsylvania Railroad Company's responsibility towards passengers leaving its trains but prior to arrival within the station proper or on public walks.

Though not asserted as the basis for a defense in the pretrial order (*R. R.* 4:29–1), the defendant urges that its responsibility for maintenance of the platform as the means of egress was limited by the terms of paragraph 18, section 2, of the tariff and relies upon decisions typified by *Louisville & N. R. Co. v. Challers*, 279 *U. S.* 320, 49 *S. Ct.* 329, 73 *L. Ed.* 711 (1929). See also *Missouri Pacific R. Co. v. Prude*, 265 *U. S.* 99, 44 *S. Ct.* 450, 68 *L. Ed.* 919 (1924); *Pennsylvania R. R. Co. v. Jones*, 155 *U. S.* 333, 15 *S. Ct.* 136, 39 *L. Ed.* 176 (1894). In the *Challers* case the plaintiff purchased a through coupon ticket at the New Orleans office of the Louisville & Nashville Railroad Company for passage over the Louisville & Nashville to Montgomery, Alabama, over the Atlanta & West Point Railroad from Montgomery to Atlanta, Georgia and thence to Washington, D. C. over the Southern Railway Company. The cars composing the train were furnished by the three carriers on the basis of their respective mileage, and each furnished locomotive power and train crews over its own line. The plaintiff was injured

while on the train in Virginia on the line of the Southern Railway Company and sued the Louisville & Nashville as well as the Southern. In holding that there should have been a directed verdict in favor of the Louisville & Nashville the Supreme Court pointed out that there was no evidence of negligence on its part, that the injury occurred on the line of the Southern while the train was being operated by its crew, and that the ticket issued by the Louisville & Nashville contained an express provision that "In selling this ticket and checking baggage thereon the selling carrier acts only as agent and is not responsible beyond its own line." [279 *U. S.* 320, 49 *S. Ct.* 332.]

█ It seems clear that the holding in the *Chatters* case has no bearing on the factual situation before us. The plaintiff Celia Horelick purchased a single ticket which entitled her to transportation (including safe means of ingress and egress) by the Pennsylvania Railroad Company from New York to Washington, D. C. She was transported over the line of the Pennsylvania in a train operated by a Pennsylvania crew and at no time during the journey were the train and its passengers turned over to a connecting carrier, as in the *Chatters* case. Under the circumstances, the Pennsylvania's responsibility to its passengers did not end abruptly at Florida Avenue or when the train stopped at the Washington Terminal but continued thereafter until they had reasonable opportunity to leave by way of a safe means of egress. See *Spofford v. Central R. R. Co., supra.* For negligent failure to discharge such responsibility to its passengers, the Pennsylvania would seemingly be accountable even if the tickets issued by it had contained express provision to the contrary. Both federal and state decisions uniformly recognize that it is against public policy for a carrier to stipulate for exemption of liability in the event its negligence results in injury to its passengers. See *Paul v. Pennsylvania R. R. Co.,* 70 *N. J. L.* 442, 57 *A.* 139 (*Sup. Ct.* 1904); *Sheridan v. New Jersey & N. Y. R. R. Co.,* 104 *N. J. L.* 622, 624, 141 *A.* 811 (*E. & A.* 1928); *New York Central R. R. Co. v. Lockwood,* 17 *Wall.* 357, 84 *U. S.* 357, 21 *L. Ed.* 627 (1872);

*Santa Fe P. & P. R. Co. v. Grant Bros. Constr. Co.*, 228 *U. S.* 177, 184, 33 *S. Ct.* 474, 57 *L. Ed.* 787, 791 (1913). Nothing in the pertinent federal legislation suggests authority in the Interstate Commerce Commission to authorize such stipulation. *Cf. Chicago, R. I. & P. R. Co. v. Maucher*, 248 *U. S.* 359, 39 *S. Ct.* 108, 63 *L. Ed.* 294 (1919); *Pacific S. S. Co. v. Cackette*, 8 *F.* 2d 259, 261 (9 *Cir.*, 1925), *certiorari* denied 269 *U..S.* 586, 46 *S. Ct.* 203, 70 *L. Ed.* 426 (1926); *Joseph Toker Co., Inc., v. Lehigh Valley R. R. Co.*, 12 *N. J.* 608 (1953).

█ In any event, we are satisfied that paragraph 18, section 2, of the tariff may not reasonably be construed as seeking to limit the Pennsylvania's responsibility for injuries to its passengers resulting from its failure to furnish a reasonably safe platform for egress at the Washington Terminal. It simply states that in issuing tickets for passage "over the lines of the carriers participating herein" the issuing carriers act only as agents and are not responsible "beyond their own lines." The participating carriers are specifically named in the tariff and the purpose was apparently to provide that the issuing carrier shall not be responsible where the injury occurs not on its line but on the line of one of the other participating carriers. The Washington Terminal Railroad Company was not named as a participating carrier and nowhere in the tariff is there any reference to it or to the Pennsylvania's stational facilities at Washington. It seems hardly conceivable that the general terms of paragraph 18 were designed to place any restriction on the Pennsylvania's widely understood responsibility of furnishing a safe means of egress to passengers alighting from its trains on passage from New York to Washington. That responsibility was an integral part of its undertaking of carriage from New York to Washington and was not beyond its line or on the line of one of the participating carriers within the contemplation of the tariff; if there is doubt as to the true meaning of the defendant's tariff limitation, it has been properly resolved in favor of the plaintiffs. *Cf. Reich v. McGill*, 119 *N. J. L.* 358, 361

(*E. & A.* 1937); *Atlantic Coast Line R. Co. v. Atlantic Bridge Co.*, 57 *F.* 2d 654, 655 (5 *Cir.*, 1932).

The judgment of the Appellate Division sustaining the denial of the motion to strike the complaint is

Affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—7.

*For reversal*—None.