**FEDERAL INSURANCE COMPANY,**
Defendant, Appellant,

v.

Ada Ligia **BONILLA COLON,** etc., et al.,
Plaintiffs, Appellees.

**PAN AMERICAN WORLD AIRWAYS,**
INC., Defendant, Appellant,

v.

Ada Ligio **BONILLA COLON,** etc., et al..
Plaintiffs, Appellees.

Nos. 6867, 6868.

United States Court of Appeals
First Circuit.

Heard Feb. 5, 1968.

Decided April 2, 1968.

Rehearing Denied May 14, 1968
in No. 6868.

Francisco Ponsa Feliu, San Juan, P. R., for appellant, Federal Ins. Co.

A. Santiago Villalonga, San Juan, P. R., with whom Hartzell, Fernandez & Novas, San Juan, P. R., was on brief, for appellant, Pan American World Airways, Inc.

Harvey B. Nachman, San Juan, P. R., with whom Gustavo A. Gelpi, Santurce, P. R., and Nachman, Feldstein, Laffitte & Smith, San Juan, P. R., were on brief, for appellees.

Before ALDRICH, Chief Judge, Mc-ENTEE and COFFIN, Circuit Judges.

McENTEE, Circuit Judge.

These are diversity suits for wrongful death resulting from a fall on a stairway at the International Airport in Puerto Rico on July 11, 1963. Plaintiffs, the children and grandchildren of the decedent, obtained substantial jury verdicts against Federal Insurance Company, the insurer of the Puerto Rico Port Authority, and also against Pan American Airways. Both defendants appealed. The deceased, Nicolasa Colon Vda de Bonilla, was a woman seventy-eight years of age but apparently active and vigorous considering her age.

After showing her ticket and going through the entrance gate, decedent was handed a shoe box by her granddaughter who, with other relatives, had accompanied her to the airport. Shortly thereafter, she descended the stairway to board the plane, keeping to the far left of the stairway to avail herself of the railing. As she descended she had the shoe box in her right hand and was carrying a handbag in her left hand. It is not clear whether the fact that both hands were otherwise occupied prevented the decedent from grasping the rail firmly but at any rate she held on to it to some extent. A few steps from the bottom Mrs. Bonilla fell to the pavement thereby incurring injuries which caused her death.

Distinct theories of liability are urged against the defendants. Against Federal Insurance Company it is alleged that its insured constructed the stairway in violation of the building code of Puerto Rico. In support of this there was testimony that some of the risers on the stairway differed in height by an eighth of an inch. Against Pan American it is alleged that it breached its duty of care as a public carrier by failing to assist decedent with her packages, thereby in effect denying her the use of the railing and also by failing to warn the decedent of the dangers to be encountered in using this stairway.

The district court instructed the jury that a finding that the Port Authority did not observe the building regulations in constructing the stairway would be conclusive of the liability of the insurer. Defendant, Federal Insurance Company, argues, however, and we cannot but agree, that these regulations have no application to the structure in question and that this instruction to the jury was error.

Section 43–3 of the regulations provides that whereas new buildings constructed after the effective date must conform to its provisions, existing buildings need not unless they are enlarged, altered, or reconstructed after the effective date. Furthermore, section 43–21 defines an existing building as "a building erected prior to the effective date of this subchapter, or one for which a building permit has been issued by the Permit Official prior to the effective date of this subchapter, which permit has not yet expired."

Despite the fact that these regulations did not become effective until September 12, 1954, the district court refused to admit into evidence two documents, one dated March 18, 1953, showing the approval for construction of the passenger terminal building of the International Airport, and the other a permit for construction dated March 25, 1953. We think that this ruling of the district court was also erroneous and resulted in substantial prejudice to defendant, Federal Insurance Company, because the verdict against it was based largely on the assumption that violation of the regulations would be negligence per se.

The district court appears to have reasoned that the structure in this case was not an existing building within section 43–21 because this definition must be read in light of section 43–3(c) which contemplates a structure to be enlarged, altered or reconstructed. This interpretation seems strained even within section 43–3, since it leads to the paradoxical result that a building is not really "existing" unless it is about to be torn down. Moreover it becomes entirely untenable when analyzed in light of section 43–31, which reads in part as follows:

"(e) No changes will be required in the plans, construction, or designated use of buildings or structures for which a lawful permit has been issued and is valid at the effective date of this subchapter, provided that such construction is completed within one year after the effective date of this subchapter."

See Torres v. Metropolitan School of Commerce, Supreme Court of Puerto Rico, October 6, 1964, where it is suggested that it is up to the plaintiff to introduce evidence that the building was constructed after the effective date of the regulations.

The question remains whether we should order judgment for the defendants on their motions for directed verdicts, or simply order a new trial. Even though the plaintiffs put their case to the jury on the wrong theory, we should not now order judgment if on the record plaintiffs would have been entitled to submission on some other theory. We are satisfied that they would not.

The plaintiffs not only based their case upon violation of the nonapplicable regulations, but, although on this appeal they enlarged their ground and argued otherwise, at the trial they successfully limited the evidence to that theory. When defendants offered to show that apart from the regulations the small variations in the heights of the steps of $\frac{1}{8}$th to $\frac{1}{4}$ of an inch did not present any deviation from the standards in the community, the plaintiffs stated they "object to any standard which is in violation of the statute or regulation." The court sustained the objection. In this posture the argument in plaintiffs' brief that the steps were deficient in design quite apart from the regulations is entirely out of place. Plaintiffs may not insist that defendants cannot offer evidence on a particular theory, and then say afterwards that the evidence they

themselves put in on a different theory also made out a case for them on the theory they successfully disclaimed.

■■ Nor need we stop there. Careful scrutiny of the record fails to offer support for the contention that the stairs were defective or dangerous on ordinary negligence principles. The evidence that comes closest is the testimony of plaintiffs' pathologist that variations in the heights of steps as slight as this could cause loss of balance. Study of this testimony reveals, however, that all the witness was saying was that this could happen from the standpoint of causation, not that these variations were sufficient so that such consequences were reasonably foreseeable. Pressed on cross-examination on the reason why great numbers of persons had gone over these same steps for years without injury, he concluded that "the reaction of every person confronted by an obstacle is completely different from all other persons." On the assumption that the stairs violated some regulation, this testimony may well have established sufficient causation for decedent's fall. It did not, however, rise to the stature of indicating negligence. A defendant is not bound at its peril to anticipate every conceivable idiosyncrasy of human behavior merely because a doctor testifies after the event that some result was medically possible.

■ The separate claims asserting that even if the stairs were not defective the defendant, Pan American, should have seen that after the decedent passed through the gate she received a small package from her granddaughter; that this made it difficult for her to hold onto the handrail, and that "courtesy" dictated that an elderly lady, though in apparent good health, be helped down the stairs are without merit. Apparently the plaintiffs, members of her family who themselves accompanied the decedent to the gate and knew about the package, expect the defendant to realize better than they did the extent of personal attention she needed.

■ Moreover, this is based in part on plaintiffs' assertion that a public carrier owes its patrons the highest duty of care, citing Charbonier v. Metropolitan Bus Authority, Supreme Court of Puerto Rico, December 31, 1963; Morales Mejias v. Metropolitan Packing and Warehousing, 86 P.R.R. 3 (1962). But this applies only to passengers who are in the actual course of travel or who are boarding or alighting. The overwhelming majority rule is that it does not apply to the carrier's premises generally, Polara v. Trans World Airlines, Inc., 284 F.2d 34 (2d Cir. 1960), (applying New York law); Neering v. Illinois Cent. R. R. Co., 383 Ill. 366, 50 N.E.2d 497 (1943); contra, Ortiz v. Greyhound Corp., 275 F.2d 770 (4th Cir. 1960), (applying Maryland law). Nor is it significant that Pan American did not actually own the premises here. Horelick v. Pennsylvania R. Co., 13 N.J. 349, 99 A.2d 652, 41 A.L.R.2d 1278 (1953).

Judgment will be entered vacating the judgment of the district court and remanding the cases with direction for entry of judgment for the defendants.

## ON PETITION for REHEARING

### PER CURIAM.

Plaintiffs have petitioned for rehearing, alleging, inter alia, that our decision is contrary to an assumption made by the court in Rodriguez v. American R.R. Co. of Puerto Rico, 1932, 43 P.R.R. 472. In that case the court held that a railroad that owned a station and maintained an approach thereto for the use of the public in which it had erected iron posts, and had failed to provide illumination, owed a duty of care to a pedestrian. The assumption the court made, in finding the question of liability to be close, was that plaintiff's case would have been stronger had the injured party been a passenger. In the case at bar we have held that the approach, viz., the steps, was not shown to be defective. In considering the other claims made against Pan American we stated that they fell outside the scope of the "highest duty of care" owed by a carrier to its patrons.

Rodriguez v. American R.R. Co. of Puerto Rico, *supra*, has no bearing on either of these issues.

The petition for rehearing is denied.