**Theresa McPHAIL et al., Plaintiffs, Appellants,**

v.

**MUNICIPALITY OF CULEBRA et al., Defendants, Appellees.**

No. 77–1343.

United State Court of Appeals, First Circuit.

Argued Feb. 6, 1979.

Decided May 9, 1979.

Rehearing Denied June 5, 1979.

---

8. 11 Wright & Miller, Federal Practice and Procedure, § 2851.

9. R. 78.

Alex Gonzalez, with whom E. Berrios Perez, Hato Rey, P. R., and Dubon, Gonza-

lez & Berrios, Hato Rey, P. R., were on brief, for plaintiffs, appellants.

Harold D. Vicente, San Juan, P. R., with whom Lasa & Vincente, Milton J. Rua, Jr., and Rua & Mercado, San Juan, P. R., were on brief, for defendants, appellees.

Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.

COFFIN, Chief Judge.

This is an appeal from a judgment n. o. v. granted in favor of a manufacturer and a seller in a products liability case. Although we see significant merit in plaintiff-appellants' arguments, appellants' complete failure to advance below the theory on which the arguments are based forces us to affirm.

Following a judgment overturning plaintiff's jury verdict, we review the evidence in the light most favorable to the plaintiff, *Continental Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 696 n. 6, 82 S.Ct. 1404, 8 L.Ed.2d 777 (1962). Appellants Theresa McPhail and her two minor children brought this action after her son, Timothy, was electrocuted in a sailing accident on the coast of the island of Culebra. Timothy was sailing a 16 foot Hobie Cat[1] belonging to a friend, who was a passenger on the boat. Timothy sailed the Hobie Cat to a dock located in a small inlet to offer a sailing lesson to the owner of the dock. When the lesson was declined, Timothy pulled away from the dock and was blown further inshore while trying to tack out of the inlet. Not far from the dock, and approximately 50 feet from the inshore end of the inlet, the mast of the Hobie Cat came in contact with a high tension wire that hung only 20 feet over the water. Timothy was killed. The passenger was thrown clear and was not injured.

Theresa McPhail sued both the authorities responsible for the power lines and the manufacturer and seller of the Hobie Cat. Evidence was introduced at trial showing that the design of the Hobie Cat put the person sailing the boat in extreme danger of electrocution should the boat come near a power line. The aluminum mast is mounted in a metal frame that sits on top of two fiberglass pontoons. The mariner sits on the metal frame, holding a metal tiller arm that descends into the water. Because the fiberglass pontoons are effective insulators, the only way for current entering the mast to reach ground is to pass through the helmsman who has to be in contact with both the frame and the tiller arm. The owner's manual contained a warning to avoid power lines when launching, indicating the manufacturer's awareness of the danger.

Plaintiff's expert testified at trial that a wire grounding the frame to the tiller arm would cost, at most, $10. The expert testified further that the wire would conduct most of the current entering the mast and would have saved Timothy's life. Defendants' expert contradicted this testimony, but the jury rejected defendants' position, finding for plaintiffs against the seller and manufacturer.[2]

Although it is a close question, the facts set out above might make out a case of defective design under applicable Puerto Rican law, based on the theory of foreseeable misuse or accident and failure to provide readily available and economically feasible safety measures. *See Mendoza v. Cervezeria Corona*, 97 P.R.R. 487 (1969); *Ferrer v. General Motors Corp.*, 110 P.R.R. 244 (1971). Puerto Rico adopted the California definition of manufacturer's strict liability in tort in *Ferrer* and *Mendoza*. *See Greenman v. Yuba Power Products, Inc.*, 59 Cal.2d 57, 27 Cal.Rptr. 697, 377 P.2d 897 (Cal.1962). Subsequent to the trial in this case, the Puerto Rico Supreme Court made clear that defects of design are included

---

1. A Hobie Cat is an extremely light racing sailboat. The aluminum mast on the model Timothy was sailing was approximately 27 feet tall.

2. The jury also found the Municipality of Culebra not liable for the condition and position of the power lines. A related claim against the Puerto Rico Water Resources Authority was dismissed by the court.

under the Puerto Rican definition of "defect", and that the Restatement requirement that the product be "unreasonably dangerous"[3] need not be met in order to impose liability. *See Montero Saldana v. American Motors Corp.,* Puerto Rico Bar Ass'n Ref.No.1978–52 (May 31, 1978); *Cronin v. J. B. E. Olson Corp.,* 8 Cal.3d 12, 104 Cal.Rptr. 443, 501 P.2d 1153 (1972). Moreover, Puerto Rico has adopted the rule announced in *Daly v. General Motors Corp.,* 20 Cal.3d 725, 144 Cal.Rptr. 380, 575 P.2d 1162 (1978), that an injured victim's assumption of the risk or contributory negligence will not bar but will only reduce recovery in a strict liability case. *Montero Saldana v. American Motors Corp., supra.* Thus, even if Timothy was negligent in sailing near power lines and that negligence contributed to the injury, his survivors would be entitled to some recovery.

Appellants make all of the foregoing arguments before this court. Unfortunately, the record does not reveal that one shred of this theory was presented to the trial court. Rather, the district court's opinion granting judgment n. o. v. begins with the proposition that "Plaintiffs correctly rely upon the Restatement (Second) of Torts, section 388 . . ."[4] After quoting the supposedly applicable section, the trial court went on to hold that: (1) the possibility of electrocution from sailing into a power line is a known and obvious danger; (2) sailing into power lines is not a use for which a sailboat is supplied; (3) even if a shock from contact with overhead wires was a foreseeable danger, the suggested safety feature (a wire grounding the mast to the tiller) would actually increase danger because most power line accidents will occur while the boat is

out of the water (on a trailer) and the user is in contact with either the frame or the tiller; (4) the warning in the owner's manual was adequate; (5) posting all of the appropriate warnings on the mast would take up so much space as to be both impractical and unreadable; (6) there was no evidence that the Hobie Cat was in any way defective or dangerous; and (7) that any failure to warn was not the proximate cause of the injury—Timothy's failure to see the power line was.

As an initial matter, our review of the trial record convinces us that many of the foregoing conclusions represent the trial court's rejection of jury resolutions of conflicting evidence (*e. g.,* the findings numbered 4 and 6 above) and findings based on no evidence in the trial record (*e. g.,* the findings numbered 3 and 5 above). We doubt the propriety of the former and must reject the latter.

■ Nevertheless, we think that the judgment n. o. v. was correct as a matter of law under the rules set out in section 388 of the Restatement of Torts. Under that section, in order to incur liability a supplier must know that a chattel is unreasonably dangerous and fail to exercise reasonable care in warning of that danger. Restatement (Second) of Torts § 388, Comment a. In contrast to the general rule of liability without fault in products liability law, the rule of section 388 thus predicates liability upon a standard akin to common negligence. Applying this rule, we agree with the trial court that there was no duty to warn of the danger involved in sailing into power lines or, in the alternative, that "reasonable care" was exercised by warning of

3. Restatement (Second) of Torts § 402A (1965).

4. The section provides:

"§ 388. Chattel Known to be Dangerous for Intended Use

One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for

which and by a person for whose use it is supplied, if the supplier

(a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and

(b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and

(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous."

the obvious in the owner's manual. "It is not necessary for the supplier to inform those for whose use the chattel is supplied of a condition which a mere casual looking over will disclose . . . ." Restatement (Second) of Torts § 388, Comment k. As the trial court put it, the danger involved in sailing a boat with an aluminum mast into a power line was "patent and obvious".

As noted above, Puerto Rico does not apply a negligence or quasi-negligence standard of "unreasonably dangerous" conditions or "reasonable care" in warning to products liability cases. *Mendoza v. Cerveceria Corona, supra.* Moreover, even in jurisdictions applying the Restatement rules of products liability, section 388 would not govern this case. The preamble to section 388 expressly states that section 402A provides the special rule governing commercial manufacturers' liability.[5] Restatement (Second) of Torts § 388, at 300 (1965). In short, the judgment n. o. v. was a right decision under the wrong law.

Plaintiffs-appellants must bear the responsibility for this problem. The opinion granting judgment n. o. v. indicates that plaintiffs requested that section 388 be applied. The record does not reveal that plaintiffs argued any other law or theory to the trial court. Indeed, the pleadings, the plaintiffs' pre-trial memorandum, the court's pre-trial order, and plaintiffs' memorandum in opposition to judgment n. o. v. all indicate that plaintiffs were proceeding on a theory that appellees were somehow negligent.[6] Nor have appellants presented us with any argument tending to reconcile the law presented below with the more liberal view espoused by the Puerto Rico Supreme Court. Finally, the record does not reveal that any law other than section 388 was charged to the jury.[7] Thus, we are not presented with a case in which a plausible, if avante-garde, theory of defective design was presented to a jury and later rejected in a judgment n. o. v. Rather, the only conclusion we can draw from the record, is that appellants presented section 388 to the judge, it was charged to the jury, and the judge correctly rejected a verdict that was incorrect as a matter of law. The fault and the consequences for presenting the wrong law below rest squarely on appellants, and we must affirm. *See Herman v. Hess Oil Virgin Islands Corp.*, 524 F.2d 767, 772 n. 15 (3d Cir. 1975) (affirmatively leading trial court into error precludes appellate review); *Reed v. AMF Western Tool, Inc.*, 431 F.2d 345, 349 n. 2 (9th Cir. 1970) (failure to include legal theory argued at directed verdict motion in subsequent requested instructions precludes appellate review when theory involves factual issues.

A party may not "sandbag" his case by presenting one theory to the trial court and then arguing for another on appeal. *United States v. Gonzalez Vargas*, 585 F.2d 546 (1st Cir. 1978). When plaintiff obtains a jury verdict in his favor on a legally inadequate theory, he cannot urge a wholly new theory on appeal to support

---

5. Comment a to section 388 explains that the section is intended to apply to such situations as the liability of an owner of a car who loans it to a friend knowing that it has no brakes and fails to warn of the condition.

6. Defendants-appellees did cite section 402A in their motion for judgment n. o. v. That citation was followed by a plausible argument that the condition involved here was not an "unreasonably dangerous" defect because sailing into power lines is not a use anticipated by the seller and because the danger of such use was not exacerbated by a defective condition that was hidden from the user of the boat. We need not reach these arguments because the trial court permissibly chose to rely upon the law argued by appellant. Nor are we convinced that the trial court would have erred in

refusing to read the more liberal doctrine of "crashworthiness" now argued by appellant into section 402A.

7. The record on appeal does not contain the jury charge. As the party urging that error occurred below, it is appellants' responsibility to designate the portion of the record in which that error may be found. *United States v. One Motor Yacht Named Mercury*, 527 F.2d 1112, 1113–14 (1st Cir. 1975). Because a judgment n. o. v. amounts to a statement that the facts presented at trial could not support a reasonable man's conclusion that liability exists under the law presented to the jury, the instructions—which contain the law—would seem to be an essential part of the record.

that verdict. *Federal Insurance Co. v. Bonilla Colon,* 392 F.2d 662, 664–65 (1st Cir. 1968). Although *Federal Insurance* involved an attempt to argue on appeal a theory that plaintiff had affirmatively excluded below, we think that the same rule must apply when, through misdirected effort or a lack of preparation, plaintiff simply fails to present the proper law to the court and the jury. The result is a jury verdict that may or may not reflect findings of fact necessary for the theory argued on appeal—a jury verdict in which plaintiff can find no solace.

*Affirmed.*

### MEMORANDUM AND ORDER ON PETITION FOR REHEARING

BY THE COURT.

Appellants have provided a transcript of the jury charge and have made further arguments explaining Puerto Rico law in a petition for rehearing. Because we are cognizant of the sometimes extreme difficulty of obtaining trial transcripts during the period in question, we have taken the extraordinary measure of permitting supplementation of the record.

While it may be true, as appellant now argues, that a manufacturer's strict liability and liability for negligence are synonymous under 31 L.P.R.A. § 5141, a proposition we doubt in light of the Puerto Rico Supreme Court's discussion of the two theories in *Montero Saldana v. American Motors,* No. 1978–52 (May 31, 1978), the problem remains that appellants failed to explain this congruence to the trial court. Rather, the jury charge clearly establishes that plaintiff-appellants proceeded upon a theory of defendants' failure to use reasonable care. More important, the charge, to which appellants did not object, expressly excludes the "crash-worthiness" theory presented on appeal. The jury was instructed: "The manufacturer does not have the duty to warn of potential dangers which can only come to a user solely because of its own negligence or because of acts of third persons or from the use of the product in an unintended manner or for an unintended purpose."

Sailing into power lines was not an intended purpose of the product. Nothing in the charge allowed the jury to impose liability for failure to provide safety measures for unintended misuse and nothing argued below suggested that the jury should be charged differently.

The petition for rehearing is hereby denied.