ARTHUR McCARTHY, PLAINTIFF-RESPONDENT, v. NA-
TIONAL ASSOCIATION FOR STOCK CAR AUTO RACING,
INC., *ET AL.*, DEFENDANTS-APPELLANTS.

Argued December 6, 1966—Decided February 6, 1967.

*Mr. Edward DeSevo* argued the cause for appellants (*Messrs. DeSevo & Cerulli,* attorneys for appellant National Association for Stock Car Auto Racing, Inc.; *Messrs. Lynch & Gavarny,* attorneys for appellants Old Bridge Stadium, Inc. and Walter Lawson).

*Mr. M. Marvin Soperstein* argued the cause for respondent.

PER CURIAM. The Law Division entered an interlocutory order which determined that a Release and a Benefit Plan Registration executed by the plaintiff were invalid as a bar to the plaintiff's right to sue. 87 *N. J. Super.* 442 (1965). The Appellate Division granted leave to appeal and affirmed substantially for the reasons set forth in the Law Division's

opinion. 90 *N. J. Super.* 574 (1966). We granted certification on the application of the defendants. 47 *N. J.* 421 (1966).

The National Association for Stock Car Auto Racing, Inc. (NASCAR) is a foreign corporation engaged in the operation of stock car races, so-called sporting events. On June 4, 1961 the plaintiff arrived at the Old Bridge Stadium and applied to enter his stock car in the races which NASCAR was conducting there. Upon being advised that he would have to become a member of NASCAR he paid a fee and signed two documents, one of which was captioned "Release" and the other "Benefit Plan Registration." The Release set forth that the plaintiff absolved NASCAR from liability for any injury which might be sustained by him while on the premises. The Benefit Plan Registration set forth certain benefits payable in the event of his accidental injury in a NASCAR sanctioned event and stipulated that they would constitute the limits of liability. It also embodied a form of release which ran in favor of NASCAR, the owners and lessees of the premises, and others associated with the races.

Apparently the plaintiff's car had an unshielded gas line in the driver's compartment, but no one had inspected it on NASCAR's behalf, and the plaintiff was permitted to enter a race which he won. After the final flag had dropped, the plaintiff's car burst into flames and he was seriously burned. He instituted action against several defendants including NASCAR, Old Bridge Stadium, Inc., a New Jersey corporation which owned the stadium where the race was held, and Walter Lawson who was employed at the premises as an inspector. The defendants' answer set forth various matters including separate defenses based on the pertinent provisions of the Release and the Benefit Plan Registration. At the suggestion of the trial court, the parties submitted their pleadings, along with briefs and depositions, for an appropriate pretrial ruling which was followed by the court's opinion declaring the invalidity of the releasing provisions in the documents signed by the plaintiff. All other questions were

reserved for trial (87 *N. J. Super.,* at *p.* 446), and the only issue which fairly calls for present consideration is the soundness of the holding that the releasing provisions were against the public policy of our State and were therefore ineffective.

In several of our sister states, releases by stock car drivers have been sustained. See *French v. Special Services, Inc.,* 107 *Ohio App.* 435, 159 *N. E.* 2d 785 (*Ct. App.* 1958); *Corpus Christi Speedway v. Morton,* 279 *S. W.* 2d 903 (*Texas Civ. App.* 1955); *Theroux v. Kedenburg Racing Association,* 50 *Misc.* 2d 97, 269 *N. Y. S.* 2d 789 (*Sup. Ct.* 1965); *cf. Del Santo v. Bristol County Stadium, Inc.,* 273 *F.* 2d 605 (1 *Cir.* 1960). But in those states there were no statutes or regulations evidencing public policy or official interest in this field of activity. So far as appears, stock car races in those jurisdictions are wholly ungoverned and parties are at liberty to enter into such private relations and arrangements as they choose. But in our State, the Legislature has taken an interest in the field and has expressed its policy by providing for licensing and for regulation designed for the safety of both participants and spectators. See *N. J. S. A.* 5:7–8 *et seq.*

Every operator of stock car races must first obtain a license from the Department of Law and Public Safety (*N. J. S. A.* 5:7–8) which is directed to promulgate regulations prescribing devices "designed to protect participants in and spectators attending" the races. *N. J. S. A.* 5:7–14. The subjects of regulation referred to in the statute expressly include, *inter alia,* the "inspection of vehicles and equipment." *N. J. S. A.* 5:7–14. Prior to June 1961 when the plaintiff's accident occurred, the Department had prescribed various safety requirements and, in particular, had directed that no fuel lines or fuel pumps "be permitted in the driver's compartment unless properly shielded by metal." 87 *N. J. Super.,* at *p.* 447. In 1963 the Department promulgated amended regulations which provided, in express terms, that the licensee shall arrange for the inspection of participating vehicles to determine that they satisfy the regulations; in

our opinion such general inspection requirement was clearly implicit throughout the earlier departmental regulations.

Though the Legislature may have had the safety of the spectators foremost in mind, it also had the safety of the participants in mind, as witness the very language and directions in *N. J. S. A.* 5:7–14. The prescribed safety requirements may not be contracted away, for if they could be the salient protective purposes of the legislation would largely be nullified. In *Boyd v. Smith,* 372 *Pa.* 306, 94 *A.* 2d 44 (*Sup. Ct.* 1953), a defendant landlord relied on an exculpatory clause in the lease as a defense to an action grounded on the failure to comply with a legislative mandate for tenement fire escapes; in rejecting the defense, the Pennsylvania Supreme Court said:

"Such a protective clause is undoubtedly valid and enforceable if it does not contravene any policy of the law, that is, if it is not a matter of interest to the public or the State but merely an agreement between persons relating entirely to their private affairs. Cannon v. Bresch, 307 Pa. 31, 160 A. 595; Jacob Siegel Co. v. Philadelphia Record Co., 348 Pa. 245, 35 A. 2d 408; Manius v. Housing Authority of the City of Pittsburgh, 350 Pa. 512, 39 A. 2d 614; Wright v. Sterling Land Co., Inc., 157 Pa. Super. 625, 43 A. 2d 614. The situation becomes an entirely different one in the eye of the law when the legislation in question is, as here, a police measure obviously intended for the protection of human life; in such event public policy does not permit an individual to waive the protection which the statute is designed to afford him." 94 *A.* 2d, at p. 46.

We subscribe to the foregoing views and consider them applicable here. See 87 *N. J. Super.,* at *p.* 449; *cf.* 39 *Temple L. Q.* 214 (1966). The judgment of the Appellate Division sustaining the Law Division's determination is accordingly:
Affirmed.

*For affirmance* — Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN — 7.

*For reversal* — None.