96 N.J. Super. 167 (1967)
232 A.2d 683
TOWNSHIP OF HILLSIDE, IN THE COUNTY OF UNION, A MUNICIPAL CORPORATION, PLAINTIFF-APPELLANT,
v.
LEHIGH VALLEY RAILROAD COMPANY, A PENNSYLVANIA CORPORATION, AND LEHIGH VALLEY RAILROAD COMPANY OF NEW JERSEY, A CORPORATION, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted June 5, 1967.
Decided July 14, 1967.
*168 Before Judges CONFORD, FOLEY and LEONARD.
Mr. A. Howard Finkel, attorney for appellant.
*169 Messrs. Lamb, Blake, Hutchinson & Dunne, attorneys for respondent Lehigh Valley Railroad Company (Mr. Joseph T. Ryan, of counsel and on the brief).
The opinion of the court was delivered by LEONARD, J.A.D.
Plaintiff appeals from a judgment of dismissal entered by the trial court in its declaratory judgment action wherein it sought a "ruling that defendant should pay the cost of replacing or repairing" a footbridge over defendant's tracks.
In the late 1800's, when defendant's railroad was built, the land where the bridge is located was a farm owned by one Dod. Since the railroad bisected his farm, defendant, in partial consideration for the right of way, agreed to and did construct a timber vehicle bridge across the railroad tracks. In 1925 defendant wrote to plaintiff calling its attention to the fact that the bridge was in disrepair. It disavowed any obligation to maintain the bridge but stated its willingness to donate it to plaintiff if the latter would maintain it. Evidently plaintiff investigated and on December 28, 1926 entered into an agreement with defendant whereby defendant agreed to permit plaintiff to construct a pedestrian footbridge over the tracks meeting certain specifications. Plaintiff agreed to maintain the bridge and make any repairs. The presently important provision of the agreement is paragraph 6 (discussed infra) under which plaintiff released defendant from any liability for any damage done to the bridge by reason of any of the operations of the railroad.
It is not disputed that the bridge was damaged on June 10, 1964 as a result of being struck by one of defendant's freight cars that had become derailed. Plaintiff alleged that the derailment was caused by the fact that one of defendant's employees negligently left a siding switch open.
Plaintiff first contends that defendant is under a statutory obligation to provide and maintain the bridge. It relies upon R.S. 48:12-49, which provides in pertinent part:
*170 "Every railroad company owning, leasing or controlling any right of way for a railroad within this state shall construct and keep in repair good and sufficient bridges and passages over, under and across the railroad or right of way where any road, street or avenue now or hereafter laid, shall cross the same, so that public travel on the road is not impeded thereby. Said bridges and passages shall be of such width and character as shall be suitable to the locality in which they are situated." (Emphasis added)
A review of plaintiff's map showing the street layout in the township discloses that on the south side of defendant's right of way at the specific location there is a street (either a spur of Hollywood Avenue or a continuation of Oakwood Avenue) which runs perpendicular to the right of way but does not continue across it. Moreover there is no street laid out on the north side of the tracks which crosses the right of way. On that side there are two lots (Nos. 322 and 323) which were deeded to plaintiff in 1926 as a part of the arrangements for building the bridge. Both the township clerk and the township engineer testified that to their knowledge there was no street laid out at this point. In the absence of proof that "any road, street or avenue * * * shall cross the [right of way]" the quoted statute does not apply. Therefore we conclude defendant was under no statutory duty to "keep [the bridge] in repair."
We consider next plaintiff's contention that the exculpatory clause (paragraph 6) of the agreement is invalid in that it is contrary to the public interest and public policy.
The pertinent portion of Paragraph 6 provides as follows:
"* * * the Township hereby releases the Railroad Company from any liability for any damage that may be done to said bridge and its appurtenances, or any of them, or delay or interference with the use of said bridge by reason of any operations of the Railroad Company or otherwise howsoever."
In Mayfair Fabrics v. Henley, 48 N.J. 483 (1967), the court, in upholding an exculpation clause contained in a commercial lease, said:
*171 "Where they do not adversely affect the public interest, exculpatory clauses in private agreements are generally sustained. Globe Home Improvement Co. v. Perth Amboy, etc., Inc., 116 N.J.L. 168, 170 (E. & A. 1936). But where a party to the agreement is under a public duty entailing the exercise of care, he may not relieve himself of liability through negligence through an exculpatory clause; illustrative are common carriers, public utilities, and the like. See Horelick v. Pennsylvania R. Co., 13 N.J. 349, 357 (1953); 6A Corbin, Contracts § 1472 (1962); cf. McCarthy v. National Association for Stock Car Auto Racing, Inc., 48 N.J. 539 (1967)." (at p. 487)
Here however, as we have just determined, defendant was not under a public or statutory duty to maintain this bridge. Thus the parties dealt with each other in this contractual relationship as any two parties might deal with reference to any private business undertaking.
"Accordingly, a railroad company may validly require, as a consideration of permitting another to erect and use buildings, or to store property, on its right of way or other lands owned by it, that it be indemnified against damages to such buildings or property caused by the negligence of its employees and agents. The ground on which such a contract is upheld is that the company owes no duty to the public to exercise care with respect to buildings on its right of way, and may exact its own conditions for permission to place them there, and that it is acting not as a carrier, but in a private capacity." Annotation, 175 A.L.R.S. 94-96 (1948), and cases cited therein.
See also: Michigan Millers Mut. Fire Ins. Co. v. Canadian Northern Ry. Co., 152 F.2d 292-296 (8 Cir. 1946); Pettil Grain & Potato Co. v. Northern Pac. Ry. Co., 227 Minn. 225, 35 N.W.2d 127 (Sup. Ct. 1948); Southern Pacific Co. v. Morrison-Knudsen Co., 216 Or. 398, 338 P.2d 665 (Sup. Ct. 1959); 6A Corbin on Contracts, § 1472, p. 594 (1962).
Neither Horelick v. Pennsylvania R. Co., 13 N.J. 349 (1953), nor McCarthy v. National Association for Stock Car Auto Racing, Inc., 48 N.J. 539 (1967), are applicable to the instant case. Horelick held that a provision of a ticket issued by a railroad carrier exempting it from liability in the event its negligence results in injury to the passenger was void as *172 being against public policy. The basis of this holding was that a common carrier cannot relieve itself of the duty to exercise reasonable care for the protection of the safety of its passengers.
McCarthy determined that a release signed by plaintiff stock car driver which purported to hold the stock car racing association immune from liability for damages was void by reason of a statute (N.J.S.A. 5:7-8 et seq.) which evidenced a public concern over that field of activity by providing for licensing and regulating stock car races and was designed to promote the safety of both participants and spectators. The court distinguished the case law of other jurisdictions upholding such releases, stating that in those states there were no statutes or regulations "evidencing public policy or official interest in this field of activity." 48 N.J., at p. 542.
Plaintiff township urges that there is a public interest present here because its residents have the right to the use of the bridge in traveling across defendant's tracks from one portion of the township to the other. This argument is not sound. Plaintiff is under a contractual obligation to provide and maintain the bridge; the only question is whether plaintiff or defendant should bear the costs of repairing it. The determination of this issue does not in any way impair the public's right to use the bridge, and consequently we find no public interest present precluding enforcement of the exculpation clause.
Plaintiff next argues that the exculpation clause is beyond the authority of a municipal government to make, and therefore ultra vires. It relies upon America Malleables Co. v. Town of Bloomfield, 83 N.J.L. 728 (E. & A. 1912), but that case is inapposite. The court there held that "A municipal body has no power to indemnify one against his own act which may result in damage to the property of another, where public rights are not concerned." (at p. 733; emphasis added) Here the clause was directed toward the maintenance of a footbridge which was not private property or "the property of another" but to the contrary was the property of plaintiff, *173 who by the agreement between the parties was obligated to construct and maintain it.
Plaintiff also contends the exculpatory clause is void because the parties to the agreement were not in a position of equality to bargain. It argues that because of the public need to traverse defendant's track at the point of the bridge, and the right of the railroad to exclude any such facility across its right of way, defendant was in a position "to dictate the terms, and dictate the terms it did." However, the record does not support this allegation; there is nothing to indicate that the agreement, including the exculpation clause, was not fairly and honestly negotiated and understandingly entered into. Cf. Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358, 396-397 (1960). There is no proof that plaintiff had to accept what was offered. Kuzmiak v. Brookchester, 33 N.J. Super. 575, 585 (App. Div. 1955); Mayfair Fabrics v. Henley, supra, 48 N.J., at pp. 487-488.
For the foregoing reasons, we conclude that the exculpation clause was valid and binding and relieved defendant from any obligation to defray the cost of replacing or repairing the foot bridge.
Judgment affirmed.