97 N.J. Super. 391 (1967)
235 A.2d 211
MOREIRA CONSTRUCTION CO., INC., A NEW JERSEY CORPORATION, PLAINTIFF-APPELLANT,
v.
MORETRENCH CORPORATION, A NEW JERSEY CORPORATION, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 2, 1967.
Decided October 31, 1967.
*392 Before Judges GAULKIN, LEWIS and KOLOVSKY.
Mr. George J. Kenny argued the cause for appellant (Messrs. Pindar, McElroy, Connell & Foley, attorneys).
Mr. Clifford W. Starrett argued the cause for respondent (Messrs. Schenck, Price, Smith & King, attorneys).
PER CURIAM.
The record in this case is somewhat unusual. According to the pretrial order, plaintiff Moreira Construction Co., Inc. (Moreira) sued defendant upon a written contract under which defendant "was to provide certain equipment on a rental basis. Moreira contends that the equipment * * * was defective and was not reasonably fit for its intended use * * * Moreira * * * relied upon defendant's representation that the pumps were in good working order * * * when in fact they were not, as a result of which the pumps repeatedly broke down. [and] delayed *393 plaintiff's construction operations," to plaintiff's damage. Defendant denied plaintiff's allegations and counterclaimed for monies due for rent, material and services. Among other things, defendant contended that (1) the representations and warranties which plaintiff alleged, whether express or implied, "were expressly excluded" by the written contract, and (2) in any event, defendant was not liable for any interruption of plaintiff's construction operations because the contract provided:
"23. The liability of Lessor to Lessee is expressly limited to the free replacement (f.o.b. point of shipment) of any defective part or parts of the equipment furnished under or subsequent to this agreement on receipt by Lessor of said defective part or parts f.o.b. Rockaway, New Jersey, provided such defect is not caused by misuse or neglect on the part of Lessee."
The case was tried before a jury. During the course of the trial the trial judges struck out the defense predicated upon paragraph 23 of the contract on the ground that the paragraph was invalid because against public policy. The jury was instructed to determine whether there had been a breach of implied warranty of fitness for plaintiff's use and, if so, to fix the damages. It returned a verdict in plaintiff's favor of $3,900. (The $1,400 verdict returned in favor of defendant on its counterclaim is not in dispute.) Thereafter the trial judge, on defendant's motion, ordered a new trial as to all issues, concluding that he had erred in holding paragraph 23 invalid. Plaintiff's application for leave to appeal from that order was denied. In the new trial the trial judge directed a verdict in defendant's favor. The record of the second trial has not been submitted to us, but the parties appear to agree that the verdict was directed upon the theory that paragraph 23 barred an action for the damages sought by plaintiff for the interruption of its business.
After plaintiff appealed, the parties entered into the following stipulation:
*394 "In order to avoid the necessity of printing the transcript of the proceedings before the Trial Court, which resulted in the entry of the second judgment from which the plaintiff-appellant appeals, it is hereby stipulated and agreed between the parties that in the event the Court, on appeal, affirms the action of the trial court in setting aside the first judgment and granting a new trial on all issues, that the judgment in favor of Moretrench Corporation and against Moreira Construction Company, Inc., of December 5, 1966, dismissing the complaint and entering judgment on the counterclaim, shall be affirmed unless remanded for retrial on plaintiff's understanding of the release."
From this stipulation and plaintiff's brief it appears to us that the only question for us to decide is whether the trial court erred in ordering a new trial as to all issues. The only argument briefed by plaintiff is that paragraph 23 was "void as a matter of law." To support this argument plaintiff relies principally upon Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358 (1960); Santor v. A & M Karagheusian, Inc., 44 N.J. 52 (1965), and Cintrone v. Hertz Truck Leasing Rental Service, 45 N.J. 434 (1965), but those cases are clearly distinguishable.
Parties to a contract may agree to limit their liability as long as the limitation is not violative of public policy. Silvestri v. South Orange Storage Corp., 14 N.J. Super. 205 (App. Div. 1951); 5 Williston, Contracts (3d ed. 1961), § 781A, pp. 709-710. It is plaintiff's contention that the rationale of Henningsen is applicable here.
Initially, it should be pointed out that here the contract between the parties consisted of one page. Although Carlos Moreira testified that paragraph 23 was never brought to his attention nor read by him it is clear that, in the absence of fraud, one who does not choose to read a contract before signing it cannot later relieve himself of its burdens. Fivey v. Pennsylvania R.R. Co., 67 N.J.L. 627 (E. & A. 1902).
In Henningsen the manufacturer of an automobile gave an express warranty which sought to limit its liability to replacement of defective parts and which disclaimed all other warranties, express and implied. The court held that this *395 provision was violative of public policy. But the underlying factor which led the court to that conclusion was the "gross inequality of bargaining position occupied by the consumer in the automobile industry * * *." 32 N.J., at p. 391.
Unlike Henningsen, which dealt with a manufacturer and an ordinary layman, the instant matter deals with two corporations in a commercial setting. Although plaintiff Moreira is obviously a small corporation, its owner has been engaged in the construction business for 18 years.
Furthermore, in Henningsen the court noted that the clause in question was a standardized one used throughout the automotive industry, 32 N.J., at p. 390, thus leaving the consumer with no alternative but to accept the terms of the contract as stated. In 1958 defendant Moretrench Corp. was the world's largest well point company: Ivy H. Smith Company v. Moretrench Corporation, 253 F.2d 688, 689 (5 Cir. 1958). However, there was testimony to the effect that there were three competitors of defendant in the area and there was no showing that plaintiff was precluded from negotiating a contract on more favorable terms.
Exculpatory clauses in apartment house leases also have been held to be invalid because of inequality of bargaining power, Kuzmiak v. Brookchester, 33 N.J. Super. 575 (App. Div. 1955), but such clauses are normally valid in leases of industrial property since no inequality of bargaining power exists. Mayfair Fabrics v. Henley, 48 N.J. 483 (1967); Midland Carpet Corp. v. Franklin Assoc. Properties, 90 N.J. Super. 42 (App. Div. 1966).
Plaintiff also relies on Myers v. Land, 314 Ky. 514, 235 S.W.2d 988 (Sup. Ct. 1951), a case cited in Henningsen. In that case plaintiff purchased from defendant a machine to manufacture concrete blocks. The contract of sale expressly disclaimed any warranties not contained therein and limited defendant's liability to the replacement of defective parts. When the machine failed to manufacture concrete blocks plaintiff instituted an action for the purchase price. The court held that the limitation of liability *396 and disclaimer of warranties did not bar the suit. But the theory upon which the court based its holding is important. It held that the failure of the machine to accomplish the purpose for which it was designed amounted to more than a breach of warranty. Rather, "There has been no delivery of that which was bought." 235 S.W.2d, at p. 991. The court said that if defendant's disclaimers could prevent plaintiff from bringing an action for the price, "one would have no recourse where he got an automobile without a motor or wheels." 235 S.W.2d, at p. 990. Here plaintiff did not allege a total failure of consideration, and it did not seek the return of the rental. It did not claim that the equipment did not work at all but that it worked poorly, particularly during the period from November 7 to November 15, and that the poor performance was due to a defective pump. But plaintiff had used the pump continuously from August 1 to November 7, 24 hours a day. His claim was for the costs allegedly incurred because of the idleness of his work force from November 7 to November 15 caused by the failure of the pump to keep the job site free of water. In such an action the rationale of Myers does not apply, and paragraph 23 is a bar against such a claim.
Affirmed. No costs.