688 A.2d 159

MARBRO, INC., PLAINTIFF, v. BOROUGH OF TINTON FALLS, DEFENDANTS/THIRD PARTY PLAINTIFFS, v. FELLOWS, READ & ASSOCIATES, THIRD PARTY DEFENDANTS.

Superior Court of New Jersey
Law Division Monmouth County

Decided January 26, 1996.

412

*James P. Hurley,* for defendant/third party plaintiff (*Himmelman, Hurley & Himmelman,* attorneys).

*Richard Ford Wells,* for third party defendant (*Hecker, Brown, Sherry & Johnson,* attorneys).

D'AMICO, J.S.C.

This matter comes before the court on a motion by third party defendant, Fellows, Read & Associates (FRA), for partial summary judgment to enforce as to defendant/third party plaintiff, Borough of Tinton Falls (Borough) a limitation of liability provision in an engineering services contract.

In 1988, the Borough proposed various improvements to a local park and contracted with FRA to design these improvements and serve as consultant during the construction phase of the project. Two separate contracts were entered into by the parties in order to effectuate these objectives.

During the course of construction, large quantities of glass emerged from the soil. The Borough therefore determined that the park was unusable and had to be resurfaced.

The construction phase contract dated September 27, 1988, includes the following limitation of liability provision as Paragraph 13:

> The Client agrees to limit the Consultant's liability to the Client and to all Construction Contractors and Subcontractors on this project due to the Consultant's professional negligent acts, errors or omissions such that the total liability to all those named shall not exceed *$32,500*. It is agreed that this paragraph applies only to this contract for construction services.

The Borough was sued by the plaintiff, Marbro [1], which subsequently filed a third-party complaint against FRA, alleging various counts of negligence. FRA now moves for summary judgment as to the amount of damages which may be recovered against it, arguing that the aforementioned provision limits its liability to the amount of $32,500. The Borough opposes this motion, arguing that the provision in question is void as a matter of law and is unenforceable.

There being no reported New Jersey decision on this issue, FRA relies upon the recent Third Circuit decision in *Valhal Corp. v. Sullivan Assoc., Inc.*, 44 *F*.3d 195 (3d Cir.1995), in support of its contention that the provision in question is enforceable. In that case, Valhal Corporation was a real estate developer, and Sullivan Associates was an architectural firm. The parties entered into a consulting agreement, which included the following provision:

> The OWNER agrees to limit the Design Professional's liability to the OWNER and to all construction Contractors and Subcontractors on the project, due to the Design Professionals professional negligent acts, errors or omissions, such that the total aggregate liability of each Design Professional shall not exceed $50,000 or the Design Professional's total fee for services rendered on this project.
>
> [*Id.* at 198.]

At some point, a dispute arose as to height restrictions on a particular property. Valhal brought suit against Sullivan in Federal District Court, seeking damages in excess of $2,000,000 for breach of contract, negligence, gross negligence and negligent misrepresentation based upon Sullivan's failure to apprise Valhal of the height restriction. *Id.* at 199.

---

[1] The Plaintiff, Marbro, is not involved in the instant motion.

Sullivan moved for partial summary judgment, arguing that its liability was expressly limited to $50,000 pursuant to the aforementioned limitation of liability clause. *Ibid.* Valhal made a motion to strike this provision, arguing that it was unenforceable as a matter of public policy. The District Court ruled that the provision was indeed contrary to Pennsylvania law and public policy, particularly the state's anti-indemnification statute, *Pa. Stat.Ann.* tit. 68, § 491 (1994). *Ibid.* The court held that the provision was unenforceable, and the jury returned a verdict in favor of Valhal in the amount of $1,000,000. *Id.* at 199–200.

Sullivan thereafter appealed to the United States Court of Appeals, Third Circuit, which reversed the District Court's ruling. The Court of Appeals held that the limitation of liability clause did not bar any cause of action which Valhal might have pursued. *Id.* at 202. The court further noted that Sullivan still remained liable for its negligence up to $50,000. Although the amount of liability was capped, Sullivan still bore substantial liability for its negligent acts and omissions. *Ibid.* Moreover, the court concluded that limitations of liability provisions are not disfavored under Pennsylvania law, and are routinely upheld so long as the bargaining power of the respective parties was equal at the time the contract was fashioned. *Id.* at 204. To be enforceable, however, a limitation of liability clause must be "reasonable and not so drastic as to remove the incentive to perform with due care. . . ." *Ibid.* The court made the following observation:

> Though it is possible that an agreement setting damages at a nominal level may have the practical effect of avoiding almost all culpability for wrongful action, the difference between the two concepts is nevertheless a real one. The distinction becomes more apparent in a situation which [sic] the damage level set is substantial rather than minimal. . . .
>
> [*Ibid.* (quoting *Posttape Assocs. v. Eastman Kodak Co.*, 537 F.2d 751, 755 (3d Cir.1976).]

The issue, the court held, "is whether the cap is so minimal compared to Sullivan's expected compensation as to negate or drastically minimize Sullivan's concern for the consequences of a breach of its contractual obligations." *Ibid.*

FRA argues, and this court agrees, that the analysis undertaken by the Third Circuit in *Valhal Corp.* should be employed by this court in disposing of this motion for summary judgment.

A court should ordinarily "enforce contracts as made by the parties." *Vasquez v. Glassboro Serv. Ass'n,* 83 *N.J.* 86, 101, 415 *A.2d* 1156 (1980); *Saxon Const. v. Masterclean,* 273 *N.J.Super.* 231, 236, 641 *A.2d* 1056 (App.Div.1994), *certif. denied,* 137 *N.J.* 314, 645 *A.2d* 142 (1994). "When the terms of a . . . contract are clear, it is the function of a court to enforce it as written and not to make a better contract for either of the parties." *Kampf v. Franklin Life Ins. Co.,* 33 *N.J.* 36, 43, 161 *A.2d* 717 (1960); *Levison v. Weintraub,* 215 *N.J.Super.* 273, 276, 521 *A.2d* 909 (App.Div.1987), *certif. denied,* 107 *N.J.* 650, 527 *A.2d* 470 (1987). Moreover, courts may not "rewrite the contract merely because one might conclude that it might well have been functionally desirable to draft it differently." *Brick Tp. Mun. Util Auth. v. Diversified R.B. & T.,* 171 *N.J.Super.* 397, 402, 409 *A.2d* 806 (App.Div.1979).

Our courts have traditionally upheld contractual limitations of liability. *See, e.g., Tessler and Son, Inc. v. Sonitrol Security Systems,* 203 *N.J.Super.* 477, 497 *A.2d* 530 (App.Div.1985) (upholding limitation of damages clause in contract for installation of burglar alarm); *Midland Carpet Corp. v. Franklin Assoc. Properties,* 90 *N.J.Super.* 42, 216 *A.2d* 231 (App.Div.1966) (upholding limitation of liability for negligence in commercial lease). The *Uniform Commercial Code,* at *N.J.S.A.* 12A:2–719, permits limitation of remedies in contracts for the sale of goods unless the limited remedy is unconscionable or causes the contract to fail its essential purpose. Thus, the general rule of construction is that "parties to a contract may agree to limit their liability as long as the limitation is not violative of public policy." *Moreira Constr. Co., Inc. v. Moretrench Corp.,* 97 *N.J.Super.* 391, 394, 235 *A.2d* 211 (App.Div.1967), *aff'd,* 51 *N.J.* 405, 241 *A.2d* 236 (1968).

■ The limitation of liability clause (paragraph 13) in question does not shield FRA from all potential liability for professional negligence. If it is determined that FRA acted in a negligent manner, the firm may be held liable up to $32,500. This figure represents FRA's total fee for services rendered under the construction contract. As expressed by the court in *Valhal Corp.*, the appropriate inquiry is whether the cap is so minimal compared with the expected compensation, that the concern for the consequences of a breach is drastically minimized. *Valhal Corp.;* 44 *F.*3d at 204. In the instant matter, FRA stands to lose its total fee for services rendered if negligence is found. This is not a liability cap so minimal compared with the expected compensation as to minimize FRA's concern for the consequences of a breach of its contractual obligations. The agreed-upon cap provided adequate incentive to perform.

■ In opposition to FRA's motion, the Borough advances four arguments. First the Borough argues that the limitation of liability clause is voidable because, although not subject to the requirements of the *Local Public Contracts Law*[2], the Borough still had an overall obligation to the public to obtain the lowest price. In the process of fulfilling that obligation, the Borough contends that it had to rely upon the engineer's sense of responsibility and ignore "limiting conditions."

■ It is a well-settled principle "that parties bargaining at arms-length may generally contract as they wish." *Saxon Const.,* 273 *N.J.Super.* at 235, 641 *A.*2d 1056. Indeed, the evidence suggests that the formation of the contract between FRA and the Borough was an arms-length transaction. The Borough had at its disposal engineers and attorneys who had the opportunity to review the contract before it was executed. The limitation of liability clause is itself clear and unambiguous.

---

[2] *N.J.S.A.* 40A:11–5.

Although the Borough is attempting to convince this court that it was powerless to negotiate the terms of this agreement, there is no evidence to suggest this. Moreover, nothing in the record indicates that the Borough even addressed this issue at the bargaining table during negotiations. FRA was therefore justified in relying upon the inclusion of the limitation of liability clause in the agreement and was further justified in relying upon the assumption that the Borough would honor it.

One of the factors that must be considered by a court in evaluating the enforceability of a contract is "the parties' justified expectations." *Id.* at 237, 641 A.2d 1056 (citing Restatement (Second) of Contracts § 178(2), (3)). I am unpersuaded by the Borough's contention that it was somehow "disadvantaged" during the bargaining process or otherwise justified in any expectation that the limitation of liability clause would not be enforced.

The Borough's second argument is that paragraph 13 of the contract, the limitation of liability provision, is inconsistent with paragraph 14, pertaining to indemnification, which reads as follows:

> The Client agrees to defend and indemnify the Consultant against any action at law instituted by anyone against the Consultant related to or by reason of his rendering of services pursuant to this Agreement unless and until a court of competent jurisdiction finds that the Consultant has acted outside the scope of his duties and/or acted contrary to law and is liable for damages.

The Borough contends that when read together, the two provisions are inconsistent, paragraph 13 capping FRA's liability to the Borough at $32,500, and paragraph 14 completely shielding FRA from liability if the Plaintiff is ultimately successful in a claim against FRA. The Borough urges that both clauses be stricken from the contract.

FRA is not seeking relief under the indemnification clause, but is seeking relief under the limitation of liability clause. Moreover, the clauses are not mutually exclusive. The limitation of liability clause establishes a cap on FRA's liability to the Borough. The indemnification clause requires the Borough to defend and indemnify FRA against any legal action related to the rendering of

services pursuant to the agreement, "unless and until a court of competent jurisdiction finds that [FRA] has acted outside the scope [its] duties and/or acted contrary to law and is liable for damages." These provisions are consistent with each other.

■ This court finds that the limitation of liability clause is enforceable, notwithstanding the provisions of 2A:40A–2:

A covenant, promise, agreement or understanding in, or in connection with or collateral to a contract, agreement or purchase order, whereby an architect, engineer, surveyor or his agents, ... shall be indemnified or held harmless for damages, claims, losses or expenses including attorney's fees caused by or resulting from the sole negligence of an architect, engineer, surveyor or his agents, ... and arising either out of (1) the preparation or approval by an architect, engineer, surveyor or his agents, ... of maps, drawings, opinions, reports, surveys, change orders, designs or specifications, or (2) the giving of or the failure to give directions or instructions by the architect, engineer, surveyor or his agents, ... provided such giving or failure to give is the cause of the damage, claim, loss or expense, is against public policy and is void and unenforceable. (emphasis added).

This statute is virtually identical to its Pennsylvania counterpart, *Pa.Stat.Ann.* tit. 68, § 491 (1994), considered by the Third Circuit in *Valhal Corp.* The court determined that this statute did not embody a broad public policy "against architects attempting to contractually limit their liability." *Id.* at 205. On the contrary, the court noted that the terms of the Pennsylvania statute pertain to indemnity and hold-harmless provisions only, not to limitation of liability clauses. *Ibid.* Consistent with the findings and conclusions of the Third Circuit, this court finds that *N.J.S.A.* 2A:40A–2 does not express a blanket public policy against engineers contractually limiting their liability. The statute does not apply to limitation of liability clauses.

■ The Borough's third argument is that severe damage to the public good will result if the subject limitation of liability clause is enforced. The Borough's arguments are similar to those advanced by a municipality in *Hillside v. Lehigh Valley R.R. Co.*, 96 *N.J.Super.* 167, 232 *A.2d* 683 (App.Div.1967). In that case, the court rejected the plaintiff's contention that the public good might suffer if an exculpatory provision contained in a contract with the defendant was enforced. This provision released the defendant

railroad company from any and all liability for damages to a particular bridge. *Id.* at 170, 232 *A*.2d 683. The court found that the sole issue was whether the defendant or plaintiff would bear the costs of repairing the bridge, and that "the determination of this issue [did] not in any way impair the public's right to use the bridge." *Id.* at 172, 232 *A*.2d 683. As in *Hillside,* the sole issue before this court is the amount of damages for which FRA may be held liable under the construction phase of the contract. This issue has no bearing upon the public interest, the Borough having already resurfaced the park because it was unusable. The Borough's argument is therefore without merit.

Finally, the Borough contends that the "reasonableness" of the liability cap is a matter which must be considered by the jury. This court disagrees. If this matter were submitted to a jury, the jury would have to rewrite the terms and conditions of the contract at issue, notwithstanding the fact that the parties have already agreed upon its precise terms. The law will not permit this result. *Kampf v. Franklin Life Insurance Co.,* 33 *N.J.* 36, 43, 161 *A*.2d 717 (1960). Furthermore, the construction of a written contract is ordinarily the function of a court, and should not be left to a jury unless the terms are unclear or ambiguous. *Bedrock Foundations Inc. v. Geo. H. Brewster & Son, Inc.,* 31 *N.J.* 124, 133, 155 *A*.2d 536 (1959); *Anthony L. Petters Diner, Inc. v. Stellakis,* 202 *N.J.Super.* 11, 27, 493 *A*.2d 1261 (App.Div.1985); *Trucking Emp. of North Jersey, etc. v. Vrablick,* 177 *N.J.Super.* 142, 149, 425 *A*.2d 1068 (App.Div.1980). Since the subject limitation of liability clause is clear and unambiguous, it need not be submitted to a jury for construction.

The court notes that the limitation of liability clause in question pertains to the construction contract only, not the design contract. If the Borough can prove that any of the alleged damages resulted from a breach of the design contract, it will be able to pursue its remedies under that agreement.

The limitation of liability clause contained within the contract between the Borough and FRA is enforceable. Therefore, sum-

mary judgment will be entered in FRA's favor limiting the amount of damages which may be recovered by the Borough under the construction contract to the sum of $32,500.