**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3143-24

R.A.W., INC. d/b/a ROXBURY
AUTO WRECKERS,

     Plaintiff-Appellant,

v.

VERDANTAS, LLC, individually
and as Successor to JM SORGE,
INC., JOSEPH M. SORGE, and
MICHELLE BOUMAN, LSRP,[1]

     Defendants-Respondents.

_____

       Submitted April 15, 2026 – Decided May 5, 2026

       Before Judges Gummer and Vanek.

       On appeal from the Superior Court of New Jersey, Law
       Division, Morris County, Docket No. L-1387-24.

       Meyner and Landis LLP, attorneys for appellant (Albert
       I. Telsey, on the briefs).

---

[1] Michelle Bouwman was improperly pleaded as Michelle Bouman.

Marshall Dennehey, PC, attorneys for respondents (John H. Osorio, Eduardo Ascolese and Walter F. Kawalec, III, on the brief).

PER CURIAM

Plaintiff R.A.W., Inc. d/b/a/ Roxbury Auto Wreckers appeals from a May 27, 2025 order denying reconsideration of an order granting summary judgment to Verdantas, LLC (Verdantas), as successor to JM Sorge, Inc. (Sorge), and licensed site remediation professionals (LSRPs) Michelle Bouwman and Joseph M. Sorge (collectively defendants). Plaintiff primarily argues a waiver provision in its contract with Verdantas and Sorge violates public policy because it precludes liability from being imposed against individual LSRPs.[2] After reviewing the record and prevailing law, we affirm.

I.

On November 9, 2015, plaintiff contracted with Sorge to provide LSRP

---

[2] Plaintiff does not present an argument addressing the portion of the order granting summary judgment to Verdantas and Sorge based on plaintiff's failure to comply with the Affidavit of Merit (AOM) statute, N.J.S.A. 2A:53A-27 to -29. Thus, our review is cabined to the portion of the order granting summary judgment to LSRP Bouwman and Joseph M. Sorge. See State v. D.F.W., 468 N.J. Super. 422, 447 (App. Div. 2021) (disallowing consideration of issues not formally briefed by defendant); Drinker Biddle & Reath LLP v. N.J. Dep't of Law & Pub. Safety, Div. of Law, 421 N.J. Super. 489, 496 n.5 (App. Div. 2011) (determining the failure to brief an issue on appeal is an abandonment of that issue); R. 2:6-2(a)(6).

A-3143-24

services for the remediation of plaintiff's auto salvage yard in accordance with the New Jersey Site Remediation Reform Act (SRRA), N.J.S.A. 58:10C-1 to -29 (the Agreement). Sorge assigned Bouwman as the LSRP for plaintiff's remediation project.

After Verdantas succeeded to Sorge's interests approximately eight years later, the parties agreed Verdantas would continue to provide LSRP services to plaintiff under the terms of the Agreement. The Agreement contained the following waiver provision:

> To the fullest extent permitted by law, [plaintiff] agrees that no shareholder, officer, director, partner, principal, employee or LSRP of Consultant,[3] shall have any personal liability for any act, omission, breach, tort, fault or wrong arising from or relating to the services performed by Consultant and its LSRP under this Agreement. It is further understood that [plaintiff] is retaining Consultant to perform the work and to provide the services of the LSRP and is not retaining the LSRP directly. The Client waives its right to bring any personal liability claims directly against the LSRP. Nothing in this provision shall be construed as a waiver by the Client to assert any claim against Consultant, including any claim against Consultant's insurance company providing coverage on this project, arising from or relating to the services performed by Consultant pursuant to the Agreement.

---

[3] Under the Agreement, plaintiff was designated as the "Client" and it appears Sorge was the "Consultant."

On July 17, 2024, plaintiff filed a complaint against defendants, alleging professional malpractice, negligence, fraud, breach of contract, breach of good faith and fair dealing, common law indemnification, and unjust enrichment. On defendants' motion, the trial court dismissed the claims against Bouwman and other individual defendants, based in part on the contractual personal-liability waiver, but granted plaintiff leave to file an amended complaint. Plaintiff filed an amended complaint that alleged the LSRP services deviated from industry standards and caused it to suffer damages. [4]

Defendants moved for summary judgment based on plaintiff's failure to provide an AOM pursuant to N.J.S.A. 2A:53A-27 and because plaintiff's claims against Bouwman, Joseph M. Sorge and other individual defendants were barred by the personal-liability waiver provision in the Agreement. After oral argument, the judge granted summary judgment to Verdantas and Sorge because plaintiff failed to submit an AOM as to the claims against them. Although the judge found the AOM requirement had not yet been triggered as to Bouwman and Joseph M. Sorge, he granted summary judgment to them based on the personal-liability waiver provision in the Agreement.

---

[4] Plaintiff's original complaint also included Peter R. Sorge and Courtney Palmisano as defendants. However, the amended complaint did not include them as parties.

The judge denied plaintiff's motion for reconsideration in an order accompanied by a written statement of reasons. The judge found the personal-liability waiver provision was enforceable and did not violate public policy. While recognizing such clauses receive close judicial scrutiny, the judge found the waiver provision was enforceable because the transaction involved sophisticated parties contracting at arms-length and did not foreclose plaintiff's ability to pursue relief from Verdantas and Sorge.

Plaintiff argues on appeal the judge erred by failing to apply "the public policy exception to the liability exculpation clause for a[n LSRP]"; and asserts "[t]he trial court cannot substitute another defendant as a remedy for denying the right to sue an LSRP."

II.

We begin our analysis of plaintiff's arguments by circumscribing our standard of review. We review a trial court's decision on a motion for reconsideration for abuse of discretion. In re Est. of Jones, 477 N.J. Super. 203, 216 (App. Div. 2023) (citing Pitney Bowes Bank, Inc. v. ABC Caging Fulfillment, 440 N.J. Super. 378, 382 (App. Div. 2015)). "An abuse of discretion 'arises when a decision is "made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible

basis.'"" Pitney, 440 N.J. Super. at 382 (quoting Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002)). Under Rule 4:49-2, the moving party must show "that the challenged order was the result of a 'palpably incorrect or irrational' analysis or of the judge's failure to 'consider' or 'appreciate' competent and probative evidence." Jones, 477 N.J. Super. at 217 (quoting Lawson v. Dewar, 468 N.J. Super. 128, 134 (App. Div. 2021)) (internal quotation marks omitted).

Because our review of the order denying reconsideration necessarily requires us to determine whether the judge erred by granting summary judgment to Bouwman and Joseph M. Sorge, we recount the oft-cited standard under Rule 4:46-2. A motion for summary judgment should be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). A genuine issue of material fact exists "only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact." Gayles by Gayles v. Sky Zone Trampoline Park, 468 N.J. Super. 17, 22 (App.

A-3143-24

Div. 2021) (quoting Grande v. Saint Clare's Health Sys., 230 N.J. 1, 24 (2017)). It is a well-settled principle that summary judgment is properly granted when "the evidence is so one-sided that one party must prevail as a matter of law." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995) (internal quotation marks omitted).

III.

We discern no error in the judge's conclusion that the personal-liability waiver provision in the Agreement was enforceable and does not violate public policy.

"Ordinarily, courts will not rewrite contracts to favor a party, for the purpose of giving that party a better bargain." Lucier v. Williams, 366 N.J. Super. 485, 491 (2004) (citing Kampf v. Franklin Life Ins. Co., 33 N.J. 36, 161 A.2d 717 (1960)). The Agreement here is a private contract subject to the overarching "principle that parties 'are afforded the liberty to bind themselves as they see fit.'" Vitale v. Schering-Plough Corp., 231 N.J. 234, 246 (2017) (quoting Stelluti v. Casapenn Enters., LLC, 203 N.J. 286, 302 (2010)). Freedom to contract, however, is not boundless, and the right to contract "must recede 'to prevent its abuse, as otherwise it could be used to override all public interests.'"

Ibid. (quoting Rodriguez v. Raymours Furniture Co., 225 N.J. 343, 361 (2016) (internal quotation marks omitted)).

New Jersey law "does not demand a per se ban against enforcement of an exculpatory agreement based on the mere existence of a duty recognized in the common law." Id. at 248 (quoting Stelluti, 203 N.J. at 306). However, "[c]ontracts that purport to exculpate a party from its future carelessness are subject to special rules" and "are disfavored, . . . essentially because they violate the aims underlying our tort law: deterrence of careless behavior and compensation by the wrongdoer for injuries sustained by victims." Marcinczyk v. State Police Training Commission, 203 N.J. 586, 593 (2010) (citing Hojnowski v. Vans Skate Park, 187 N.J. 323 (2006)). Therefore, a liability-waiver clause in an agreement is subject to close judicial scrutiny and will be enforced only when the clause "reflect[s] the unequivocal expression of the party giving up his or her legal rights that [the] decision was made voluntarily, intelligently[,] and with the full knowledge of its legal consequences." Vitale, 231 N.J. at 247 (quoting Stelluti, 203 N.J. at 304-05) (internal quotation marks omitted).

Courts have invalidated liability-waiver clauses that are unconscionable or in violation of public policy. Lucier, 366 N.J. Super. at 491 (citing Moreira

Constr. Co., Inc. v. Moretrench Corp., 97 N.J. Super. 391, 394 (App.Div. 1967), aff'd 51 N.J. 405 (1968)). Although "[t]here is no hard and fast definition of unconscionability," we have stated the "term implies a lack of 'good faith, honesty in fact and observance of fair dealing.'" Lucier, 366 N.J. Super. at 492, citing Kugler v. Romain, 58 N.J. 522 (1971). In Lucier, we also explained:

> In determining whether to enforce the terms of a contract, we look not only to its adhesive nature, but also to 'the subject matter of the contract, the parties' relative bargaining positions, the degree of economic compulsion motivating the 'adhering' party, and the public interests affected by the contract. Rudbart v .North Jersey District Water Supply Comm'n, 127 N.J. 344, 356, cert. denied, 506 U.S. 871 (1992). Where the provision limits a party's liability, we pay particular attention to any inequality in the bargaining power and status of the parties, as well as the substance of the contract. Valhal Corp. v. Sullivan Assoc, Inc., 44 F.3d 195, 204 (3rd Cir. 1995), Marbro, Inc. v. Borough of Tinton Falls, 297 N.J. Super. 411, 416-418 (Law Div. 1996).

We also focus on "whether the limitation is a reasonable allocation of risk between the parties or whether it runs afoul of the public policy disfavoring [such] clauses. . . ." Ibid., citing Valhal, 44 F.3d at 202-04; Marbro, 297 N.J. Super. at 416-18. Where the contracting parties are not on roughly equal bargaining terms, a contractual exemption from liability is rarely allowed to stand. Ibid.

9

Even where the provision is unambiguous and not otherwise unconscionable, "it is well-established that exculpatory contracts will not be enforced where they are contrary to public policy." Marcinczyk, at 594 (further citations omitted). Under New Jersey law,

> [a]n agreement is against public policy if it is injurious to the interest of the public, contravenes some established interest of society, violates some public statute, is against good morals, tends to interfere with the public welfare or safety, or . . . is at war with the interests of society and is in conflict with public morals.
>
> [Ibid. (alteration in original) (quoting Frank Briscoe Co. v. Travelers Indem. Co., 65 F. Supp. 2d 285, 312 (D.N.J. 1999)) (internal quotation marks omitted).]

The Court has held that "contractual provisions that tend to injure the public in some way will not be enforced." Ibid.

Finding the provision here was entered into between sophisticated parties in an arms-length transaction and the clause clearly stated plaintiff waived its right to assert claims against any individual LSRP, the judge concluded the provision was enforceable and did not violate public policy. We are unconvinced the judge erred by concluding the Agreement's waiver provision did not violate public policy because it only eliminated plaintiff's ability to recover against Bouwman and Joseph M. Sorge, leaving plaintiff with the ability to obtain relief from Verdantas and Sorge.

10

We are also unpersuaded the judge failed to analyze "the legislative public policy underpinning the LSRP profession." In the written statement of reasons appended to the order denying plaintiff's reconsideration motion, the judge expressly considered the purposes of the SRRA when finding the exculpatory clause enforceable. We see no reason to disturb the judge's well-reasoned conclusion and add only the following.

The SRRA promulgated the LSRP program to essentially privatize certain State of New Jersey, Department of Environmental Protection functions. The SRRA states a LSRP's "priority in the performance of professional services shall be the protection of public health and safety and the environment," N.J.S.A. 58:10C-16(a), and details a LSRP's responsibilities. The judge found a LSRP's violation of the duties and responsibilities set forth in the SRRA may subject them to a host of consequences. N.J.S.A. 58:10C-17 specifies remedies the Site Remediation Professional Licensing Board (Board) may seek against a LSRP found to have violated the SRRA. The judge aptly concluded the statute "does not confer upon an individual the right to bring a private cause of action against an LSRP, as suggested by . . . [p]laintiff."

We have recognized the legislative purpose of the SRRA was to "further improve the efficiency and speed with which environmental sites are

remediated." Des Champs Lab'ys., Inc. v. Martin, 427 N.J. Super. 84, 99 (App. Div. 2012). The personal-liability waiver provision at issue here does not run counter to that purpose. Moreover, the public-policy rationales underpinning our invalidation of certain exculpatory clauses—deterrence of careless behavior and compensation to the injured by the wrongdoer—are absent here because plaintiff had the ability to pursue claims against Verdantas and Sorge. Marcinczyk, 203 N.J. at 593. That plaintiff failed to meet the statutory AOM requirements to advance its claims against Verdantas and Sorge here is not relevant to our analysis of the waiver provision's enforceability.

The judge properly distinguished plaintiff's mistaken reliance on Marcinczyk, 203 N.J. 586, Hojnowski, 187 N.J. 323 (citing Lucier, 366 N.J. Super. at 491), and Erlich v. First National Bank, 208 N.J. Super. 264 (Law Div. 1984), in support of its argument that the waiver provision at issue "does not preclude a negligence or professional malpractice claim against an LSRP." The plaintiffs in Marcinczyk and Erlich were each left without any avenue to seek relief. As the judge found here, plaintiff contractually waived the right to hold any individual LSRP liable but retained the right to sue Verdantas and Sorge for their LSRP services. Cf. Marcinczyk, 203 N.J. at 590-91 (holding a provision barring "any claim" against any potential defendant was unenforceable); Erlich,

208 N.J. Super. at 287-89 (finding the language "will not be liable in any way" when used to waive all liability of a bank and its service providers was unenforceable). Thus, the public policy concerns implicated when a consumer lacks any recourse for the professional's errors or omissions are not implicated here.

Nor does the waiver provision at issue otherwise contravene established public policy, as was the case in Marcinczyk, and Hojnowski. In Marcinczyk, the Court analyzed the legislative intent underlying the Tort Claims Act, N.J.S.A. 59:2-1(a)—to reestablish sovereign immunity with specific liability-imposing exceptions—and concluded the exculpatory clause waiving liability for all police officer-trainee injuries at the police academy violated the public policy embodied in the statute. Marcinczyk, 203 N.J. at 594-600. The Hojnowski Court also held a pre-injury release of liability was unenforceable as contrary to the public's interests because it extinguished the minor's future tort claims arising from the use of a recreational skateboarding facility. Hojnowski, 187 N.J. at 333-41.

Accordingly, the judge's denial of plaintiff's motion for reconsideration was not an abuse of discretion. Any arguments we have not addressed lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Harley*

Clerk of the Appellate Division

A-3143-24